## COMMONWEALTH, FOR USE, v. JEREMIAH MILLER.

### APPEAL BY DEFENDANT FROM THE COURT OF COMMON PLEAS NO. 1 OF ALLEGHENY COUNTY.

Argued November 1, 1889—Decided January 6, 1890
[To be reported.]

A restaurant keeper furnishing oleomargarine to a customer, as a part of a meal ordered by the latter, violates thereby both the letter and spirit of § 3, act of May 21, 1885, P. L. 22, which provides that " every person . . . . . who shall manufacture, sell, or offer, or expose for sale, or have in his . . . . . possession with intent to sell " oleomargarine, " shall, for every such offence, forfeit and pay the sum of one hundred dollars."

Before PAXSON, C. J., STERRETT, GREEN, CLARK, WILLIAMS, McCOLLUM and MITCHELL, JJ.

No. 165 October Term 1889, Sup. Ct.; court below, No. 108 June Term 1889, C. P. No. 1.

On March 19, 1889, Jeremiah Miller presented his petition in the court below, praying for the allowance of an appeal from the judgment of Alderman Carlisle, in an action brought before said alderman by the commonwealth, for the use of Allegheny county and A. L. Best, against the petitioner, to recover the penalty of $100 prescribed for the sale of " oleomargarine," by § 3, act of May 21, 1885, P. L. 22. Upon consideration of the petition the appeal was duly allowed, and the alderman di-

rected to file a transcript of his proceedings upon payment of costs, and the entry of bail for future costs, within five days. The transcript was accordingly filed on March 23, 1889.

The parties subsequently agreed upon a case stated, setting out the facts as follows:

The defendant is the owner and proprietor of a restaurant and eating house at No. 123 Fifth avenue, Pittsburgh, Allegheny county, Pa., and personally conducts and manages said business, which consists of furnishing meals to transient and regular patrons, who pay for the same daily and upon the completion of each meal.

On January 31, 1889, William McRay and George Spence called at said restaurant and asked for a meal, which was at once furnished them by the waiters and employees of the defendant in the usual manner. Among other articles of food furnished them, said defendant by his employées set before them, as a part of their meal, a small dish containing what appeared to be butter, but which in fact was an article known as oleomargarine, and manufactured out of an oleaginous substance, or a compound of the same, other than that produced from unadulterated milk or of cream from the same, and designed to take the place of butter produced from unadulterated milk or cream from the same.

The article so furnished to said McRay and Spence, as a part of their respective meals, was so furnished as an article of food and as an imitation of butter, and designed to take the place of butter, and was the same article the manufacture and sale of which is prohibited by § 1 of " An Act for the protection of the public health, and to prevent the adulteration of dairy products and fraud in the sale thereof," approved May 21, 1885, P. L. 22.

Upon finishing their meals, said George Spence paid defendant the sum of fifty cents for said meals, including said small dish of oleomargarine, but they did not eat said oleomargarine, carrying the same away with them.

This suit was brought by A. L. Best to recover the penalty of $100 prescribed by § 3 of said act. If the court be of opinion that upon the facts above stated, the defendant has forfeited the penalty of $100 prescribed by the third section of said act, then judgment to be entered for the plaintiff for the sum of $100, but if not, the judgment to be entered for the

defendant. The costs to follow the judgment and either party reserving the right to sue out a writ of error therein.

The case stated having been argued, the court, SLAGLE, J., filed the following opinion:

Briefly stated, the facts as agreed upon are, that the defendant is proprietor of a restaurant in the city of Pittsburgh in which he furnishes meals to transient and regular patrons in the manner in which said business is ordinarily conducted.

On January 31, 1889, he furnished to one George Spence a meal for which he received pay, and as a part of said meal a small dish containing what appeared to be butter, but which was in fact an article known as oleomargarine, and the same article the manufacture and sale of which is prohibited by the act of May 21, 1885. The only question is whether this was a sale within that act. It was not given away, and the fact that it was not sold separately, but with other articles, for a gross sum, would not make it less a sale. It therefore comes within the letter of the law. But it is also clearly within its spirit. The title of the act is " An Act for the protection of the public health, and to prevent the adulteration of dairy products and fraud in the sale thereof." The Supreme Court of the state, in Powell v. Commonwealth, 114 Pa. 265, held that the legislature had the power to enact laws for this purpose. If the use of such articles is injurious, it would seem to be especially within the spirit of the act to prohibit public caterers from selling it to their guests as part of an ordinary meal.

Judgment will therefore be entered for plaintiff.

Judgment having been entered, the defendant took this appeal, specifying that the court erred:

1. In entering judgment on the case stated for the plaintiff.
2. In not entering judgment thereon for the defendant.

*Mr. John. S. Ferguson*, for the appellant:

1. We deny that the putting of oleomargarine on a restaurant table, as a part of a meal, is a sale of the oleomargarine. The guest may eat it or let it alone, and if he does not eat it, it is not his to take away. He therefore does not acquire by paying

for the meal an absolute or entire title to it. A transfer of the entire title is essential to constitute a sale, especially under a penal statute: Story on Sales, § 1; Creveling v. Wood, 95 Pa. 152; Garbracht v. Commonwealth, 96 Pa. 449. The act in question is a penal statute and to be strictly construed: Gallagher v. Neal, 3 P. & W. 183; Bucher v. Commonwealth, 103 Pa. 528. And this action is a penal action: Hubbell v. Gale, 3 Vt. 266. The court will not strain the construction of the law to aid a recovery: Irish v. Elliott, Add. 238; Masser v. State, 74 Ind. 368.

2. We do not overlook the proposition laid down in Bartolett v. Achey, 38 Pa. 273, that such a statute should not be construed so strictly as to entirely defeat its object; the construction here invoked is not in conflict therewith. The legislature never meant to follow the article into the hands of the consumer and inflict penalties on the boarding house mistress or restaurant keeper who may have bought it from a dealer. Certainly this court, in view of the strict adherence to the letter of the law, which compelled it in Powell v. Commonwealth, 114 Pa. 265, to sustain its constitutionality, will not be disposed to depart from the strict adherence in this case, for the benefit of a public informer who sues for his private gain.

*Mr. William Yost* (with him *Mr. John Rebman, Jr.*), for the appellee:

1. The act of 1885 should not be so construed as wholly to defeat its operation, but so as to suppress the mischief at which it was aimed. The small dish of oleomargarine mentioned in the case stated was the customary one, about two inches in diameter, with barely enough oleomargarine to supply one person. Certainly the purchaser of a meal or lunch was entitled to the whole quantity thus furnished, whether he ate it all, or carried part of it away to have it analyzed, as in this case. The transfer of a general property in the thing sold is sufficient to constitute a valid sale: Benjamin on Sales, § 1.

2. If a restaurant keeper furnished intoxicating liquor to his patrons with their meals, would there be any doubt of his violation of the statute prohibiting the sale of liquor without license? The courts have not manifested any desire to override the oleomargarine law, or to nullify its provisions by judicial

interpretation: Commonwealth v. Powell, 1 Pa. C. C. R. 94;
Powell v. Commonwealth, 114 Pa. 265; Powell v. Common-
wealth, 127 U. S. 678; State v. Addington, 77 Mo. 110. Two
sessions of the legislature have passed since its enactment, and
time has so demonstrated its value that all efforts to secure its
repeal have been abandoned.

OPINION, MR. JUSTICE CLARK:

The defendant is the proprietor of a restaurant in the city of
Pittsburgh; his business consists, in part, in furnishing meals
to transient and regular patrons, who pay for the same daily
or by the meal, according to the ordinary usage in that business.
From the facts set forth in the case stated it appears that on
January 31, 1889, William McRay and George Spence called
at this restaurant and ordered meals, which were served to
them in the usual manner. Among other food furnished by
the defendant on this occasion was a small quantity of what
appeared to be butter, but which in fact was oleomargarine, an
article of manufacture and sale which is prohibited by the act
of May 21, 1885, P. L. 22, entitled "An Act for the protection
of the public health, and to prevent adulteration of dairy pro-
ducts, and fraud in the sale thereof." It is admitted that this
oleomargarine was furnished for food, as an imitation of butter,
and that it was designed to take the place of butter in the meals
thus served. McRay and Spence, having partaken of the food
served to them, paid each fifty cents for their meals, "including
said small dish of oleomargarine," which, however, for some
reason they did not eat, but carried the same away, presumably
for examination. This suit is brought to recover the penalty
provided in the third section of the act, for the manufacture or
sale of the prohibited article, and the single question for our de-
termination is whether or not, under the facts stated, there was
a sale of the oleomargarine, within the meaning of the act re-
ferred to.

The purpose of the act is expressed in the title. It is to pre-
vent adulteration of dairy products, and fraud in the sale thereof,
and to protect the public health. It is plain that the exact
legislative intent was to prevent the sale, and thereby prevent
the use of these adulterations and admixtures as articles of
food. It was the use, as food, and the frauds perpetrated upon

the public in the sale, which was the mischief to be remedied; and the statute, of course, must be construed with reference to the old law, the mischief, and the remedy. That the food furnished to McRay and Spence, or so much of it as they saw fit to appropriate, was sold to them, cannot be reasonably questioned; when it was set before them, it was theirs to all intents and purposes, to eat all, or a part, as they chose, subject only to the restaurateur's right to receive the price, which it is admitted was promptly paid. They might not eat all of the article set before them, but they had an undoubted right to do so; and, even assuming that the meal is the portion of food taken, in the sense stated, the transaction must be regarded as a sale wholly within the purport and meaning of the statute. It is certain that the oleomargarine composed a part of the meal the price of which was paid, and was embraced in the transaction as an integral part thereof. If an unlicensed keeper of a restaurant may set before his guests a bottle of wine, or other intoxicating liquor, charging a regular price for the same, with other articles of food furnished, with liberty to take much or little of the liquor as the guest may choose, or, failing to drink it with his meal, permit him to take it away with him, then the liquor laws of the commonwealth are of no avail, and the license to sell liquor is wholly unnecessary. When the liquor is thus furnished and paid for, it is in legal effect a sale, for the very act has been done which it is the policy of the law to prevent, and which it characterizes as a crime, viz., furnishing intoxicating liquors at a price which is paid. So, in this case, the oleomargarine was furnished to the person named as food, and the price was paid. As the learned judge of the court below well said, it was not given away, and the fact that it was not sold separately, but with other articles, for a gross sum, would not make it less a sale. It therefore comes within the letter of the law, and it is also within its spirit. If the use of such articles is injurious, it would seem to be especially within the spirit of the act to prohibit public caterers from selling them to their guests as part of an ordinary meal. Penal statutes are to be strictly construed, but both the letter and the spirit of the act of 1885 cover this case, and we think the judgment was properly entered.

Judgment affirmed.

OPINION DISSENTING, Mr. CHIEF JUSTICE PAXSON:

I am unwilling to be held responsible for this judgment, and therefore dissent. I am opposed to extending penal laws beyond their plain and obvious meaning, and am of opinion that the act of May 21, 1885, P. L. 22, prohibiting the sale of the article of food known as "oleomargarine," was intended to apply only to dealers, or persons engaged in the sale thereof in the line of their business. When the legislature used the word "sale," it is fair to assume that it was employed in the sense in which it is popularly understood. If it was the intention not only to prohibit sales of oleomargarine, but also its use as an article of food, or in the preparation of food, by proprietors of eating-houses, restaurants, and hotels, it was easy to have said so in express terms. As the act stands, there is nothing to warn this defendant that he violated it by placing oleomargarine on his table as an article of food.

I am unable to see how the legal or the popular meaning of the word "sale" will support this judgment. A sale is the transfer of the title to property at an agreed price: Story on Sales, § 1; Creveling v. Wood, 95 Pa. 152. I find nothing in the facts, as set forth in the case stated, to justify the conclusion that there was a sale of the oleomargarine. The two individuals referred to entered the defendant's place of business, and ordered a meal. It was furnished, but oleomargarine formed no part of it. It is true, there was some of that article on the table. They might have partaken of it, but they did not. When they left they carried the oleomargarine away with them. This in my opinion, they had no right to do. A guest at a hotel may satisfy his appetite when he goes to the table. He may partake of anything that is placed before him; but, after filling his stomach, he may not also fill his pockets, and carry away the food he cannot eat. This I understand to be the rule as applicable to hotels and eating-houses in this country, and if there is anything in this case to take it out of its operation it does not appear in the case stated. The illustration of the bottle of wine, referred to in the opinion of the court, does not appear to me a happy one. Surely, if the proprietor of a hotel places a bottle of wine before his guest, who does not partake thereof, it cannot be said that it is a sale of the wine, nor has the guest the right to carry it away. He might

as well carry off the table furniture.   It is quite possible, under our construction of the act of 1885: Powell v. Commonwealth, 114 Pa. 265, the legislature may have the power to prohibit the use of oleomargarine as an article of food in hotels and eating-houses, and punish a landlord who places it before his guests, but this has not yet been done, and I would not extend a highly penal law by implication.