## Commonwealth *v.* Koczwara, Appellant.

576

Argued April 30, 1959; reargued June 30, 1959. Before JONES, C. J., BELL, MUSMANNO, JONES, COHEN, BOK and MCBRIDE, JJ.

*Irving L. Epstein,* for appellant.

*Joseph J. Cimino,* Assistant District Attorney, with him *Carlon M. O'Malley,* District Attorney, for appellee.

OPINION BY MR. JUSTICE COHEN, November 25, 1959:

This is an appeal from the judgment of the Court of Quarter Sessions of Lackawanna County sentencing the defendant to three months in the Lackawanna County Jail, a fine of five hundred dollars and the costs of prosecution, in a case involving violations of the Pennsylvania Liquor Code.

John Koczwara, the defendant, is the licensee and operator of an establishment on Jackson Street in the City of Scranton known as J. K.'s Tavern. At that place he had a restaurant liquor license issued by the

Pennsylvania Liquor Control Board. The Lackawanna County Grand Jury indicted the defendant on five counts for violations of the Liquor Code. The first and second counts averred that the defendant permitted minors, unaccompanied by parents, guardians or other supervisors, to frequent the tavern on February 1st and 8th, 1958; the third count charged the defendant with selling beer to minors on February 8th, 1958; the fourth charged the defendant with permitting beer to be sold to minors on February 8th, 1958, and the fifth or final count was an averment of a prior conviction for violations of the Liquor Code.

Prior to trial, the averment of prior convictions was removed from the consideration of the jury upon motion of counsel that submission of the same would deprive the defendant of his fundamental right to exclude evidence of former convictions.

At the conclusion of the Commonwealth's evidence, count three of the indictment, charging the sale by the defendant personally to the minors, was removed from the jury's consideration by the trial judge on the ground that there was no evidence that the defendant had personally participated in the sale or was present in the tavern when sales to the minors took place. Defense counsel then demurred to the evidence as to the other three counts. The demurrer was overruled. Defendant thereupon rested without introducing any evidence and moved for a directed verdict of acquittal. The motion was denied, the case went to the jury and the jury returned a verdict of guilty as to each of the remaining three counts: two counts of permitting minors to frequent the licensed premises without parental or other supervision, and the count of permitting sales to minors.

Upon the conclusion of the trial, defendant filed a motion in arrest of judgment. After argument before the court *en banc,* the motion was overruled by Judge

HOBAN, who sentenced the defendant to pay the costs of prosecution, a fine of five hundred dollars and to undergo imprisonment in the Lackawanna County Jail for three months.

The defendant took an appeal to the Superior Court, which, in an opinion by Judge HIRT, affirmed the judgment and sentence of the lower court. A petition for an allowance of an appeal was filed by the defendant. Because of the importance of the issues raised, the petition was allowed and an appeal granted.

Defendant raises two contentions, both of which, in effect, question whether the undisputed facts of this case support the judgment and sentence imposed by the Quarter Sessions Court. Judge HOBAN found as fact that "in every instance the purchase [by minors] was made from a bartender, not identified by name, and service to the boys was made by the bartender. There was *no* evidence that the defendant was present on any one of the occasions testified to by these witnesses, nor that he had any personal knowledge of the sales to them or to other persons on the premises." We, therefore, must determine the criminal responsibility of a licensee of the Liquor Control Board for acts committed by his employees upon his premises, without his personal knowledge, participation, or presence, which acts violate a valid regulatory statute passed under the Commonwealth's police power.

While an employer in almost all cases is not criminally responsible for the unlawful acts of his employees, unless he consents to, approves, or participates in such acts, courts all over the nation have struggled for years in applying this rule within the framework of "controlling the sale of intoxicating liquor." See Anno., 139 A.L.R. 306 (1942). At common law, any attempt to invoke the doctrine of *respondeat superior* in a criminal case would have run afoul of our deeply ingrained notions of criminal jurisprudence that guilt

must be personal and individual.[1]  In recent decades, however, many states have enacted detailed regulatory provisions in fields which are essentially non-criminal, e.g., pure food and drug acts, speeding ordinances, building regulations, and child labor, minimum wage and maximum hour legislation.  Such statutes are generally enforceable by light penalties, and although violations are labelled crimes, the considerations applicable to them are totally different from those applicable to true crimes, which involve moral delinquency and which are punishable by imprisonment or another serious penalty.  Such so-called statutory crimes are in reality an attempt to utilize the machinery of criminal administration as an enforcing arm for social regulations of a purely civil nature, with the punishment totally unrelated to questions of moral wrongdoing or guilt.  It is here that the social interest in the general well-being and security of the populace has been held to outweigh the individual interest of the particular defendant.  The penalty is imposed despite the defendant's lack of a criminal intent or mens rea.

Not the least of the legitimate police power areas of the legislature is the control of intoxicating liquor. As Mr. Justice BENJAMIN R. JONES recently stated in *Tahiti Bar, Inc. Liquor License Case*, 395 Pa. 355, 360, 150 A. 2d 112 (1959), "There is perhaps no other area of permissible state action within which the exercise of

---

[1] The distinction between *respondeat superior* in tort law and its application to the criminal law is obvious.  In tort law, the doctrine is employed for the purpose of settling the incidence of loss upon the party who can best bear such loss.  But the criminal law is supported by totally different concepts.  We impose penal treatment upon those who injure or menace social interests, partly in order to reform, partly to prevent the continuation of the anti-social activity and partly to deter others.  If a defendant has personally lived up to the social standards of the criminal law and has not menaced or injured anyone, why impose penal treatment?

the police power of a state is more plenary than in the regulation and control of the use and sale of alcoholic beverages."[2] It is abundantly clear that the conduct of the liquor business is lawful only to the extent and manner permitted by statute. Individuals who embark on such an enterprise do so with knowledge of considerable peril, since their actions are rigidly circumscribed by the Liquor Code.

Because of the peculiar nature of this business, one who applies for and receives permission from the Commonwealth to carry on the liquor trade assumes the highest degree of responsibility to his fellow citizens. As the licensee of the Board, he is under a duty not only to regulate his own personal conduct in a manner consistent with the permit he has received, but also to control the acts and conduct of any employee to whom he entrusts the sale of liquor. Such fealty is the *quid pro quo* which the Commonwealth demands in return for the privilege of entering the highly restricted and, what is more important, the highly *dangerous* business of selling intoxicating liquor.

In the instant case, the defendant has sought to surround himself with all the safeguards provided to those within the pale of criminal sanctions. He has argued that a statute imposing criminal responsibility should be construed strictly, with all doubts resolved in his favor. While the defendant's position is entirely correct, we must remember that we are dealing with a statutory crime within the state's plenary police power. In the field of liquor regulation, the legislature has enacted a comprehensive Code aimed at regu-

---

[2] See also *Cavanaugh v. Gelder*, 364 Pa. 361, 72 A. 2d 85 (1950), wherein this Court went to great lengths to establish the legal and constitutional bases for the state's control of the liquor trade. Such regulation is now embodied in the Liquor Code, Act of April 12, 1951, P. L. 90, 47 P.S. §1-101 et seq.

lating and controlling the use and sale of alcoholic beverages. The question here raised is whether the legislature *intended* to impose vicarious criminal liability on the licensee-principal for acts committed on his premises without his presence, participation or knowledge.

This Court has stated, as long ago as *Commonwealth v. Weiss*, 139 Pa. 247, 251, 21 Atl. 10 (1891), that "whether a criminal intent, or a guilty knowledge, is a necessary ingredient of a statutory offense . . . is a matter of construction. It is for the legislature to determine whether the public injury, threatened in any particular matter, is such and so great as to justify an absolute and indiscriminate prohibition." In the *Weiss* case, and in *Commonwealth v. Miller*, 131 Pa. 118, 18 Atl. 938 (1890), this Court construed the statute in question in the light of its letter and spirit and its manifest purpose. See also *Commonwealth v. Jackson*, 146 Pa. Superior Ct. 328, affirmed *per curiam* by this Court in 345 Pa. 456, 28 A. 2d 894 (1942).[3]

---

[3] This case is not governed by *Carlson's License*, 127 Pa. 330, 18 Atl. 8 (1889) ; *Commonwealth v. Sellers*, 130 Pa. 32, 18 Atl. 541 (1889) ; *Commonwealth v. Holstine*, 132 Pa. 357, 19 Atl. 273 (1890) ; or *Commonwealth v. Zelt*, 138 Pa. 615, 21 Atl. 7 (1891). Those cases hold persons answerable for sales made by *themselves*, and prevent them from pleading ignorance of the nonage or intemperate habits of those to whom they sell. Nor is this case governed by *Commonwealth v. Junkin et al.*, 170 Pa. 194, 32 Atl. 617 (1895), which refused to hold a principal criminally liable for the wrongful act of his agent, where the act was in positive disobedience of the principal's instructions. The *Junkin* case did *not* involve a comprehensive regulatory scheme which clearly evidenced a legislative purpose to hold a licensee responsible for all illegal acts conducted on the licensed premises. The Liquor Code of Pennsylvania in effect makes the act of the employee the act of the licensee for the purpose of enforcing the rigid restrictions on the sale of liquor.

In the Liquor Code, Section 493, the legislature has set forth twenty-five specific acts which are condemned as unlawful, and for which penalties are provided in Section 494. Subsections (1) and (14) of Section 493 contain the two offenses charged here. In neither of these subsections is there any language which would require the prohibited acts to have been done either knowingly, wilfully or intentionally, there being a significant absence of such words as "knowingly, wilfully, etc." That the legislature intended such a requirement in other related sections of the same Code is shown by examining Section 492(15), wherein it is made unlawful to *knowingly* sell any malt beverages to a person engaged in the business of illegally selling such beverages. The omission of any such word in the subsections of Section 494 is highly significant. It indicates a legislative intent to eliminate both knowledge and criminal intent as necessary ingredients of such offenses. To bolster this conclusion, we refer back to Section 491 wherein the Code states, "It shall be unlawful (1) For any person, by himself, *or by an employe or agent,* to expose or keep for sale, or directly or *indirectly* . . . to sell or offer to sell any liquor within this Commonwealth, except in accordance with the provisions of this act and the regulations of the board." The Superior Court has long placed such an interpretation on the statute. *Commonwealth v. Speer,* 157 Pa. Superior Ct. 197, 42 A. 2d 94 (1945).[4]

As the defendant has pointed out, there is a distinction between the requirement of a mens rea and the

---

[4] It is established that a liquor license may be legally suspended or revoked for violations of the Code committed by employees of the licensee even though there is no evidence that the licensee knew of such violations. *McGrath v. Liquor Control Board,* 185 Pa. Superior Ct. 187, 137 A. 2d 812 (1958); *Southern Outing Club Liquor License Case,* 166 Pa. Superior Ct. 555, 72 A. 2d 600 (1950).

imposition of vicarious absolute liability for the acts of another. It may be that the courts below, in relying on prior authority, have failed to make such a distinction.[5] In any case, we fully recognize it.[6] Moreover, we find that the intent of the legislature in enacting this Code was not only to eliminate the common law requirement of a mens rea, but also to place a very high degree of responsibility upon the holder of a liquor license to make certain that neither he nor anyone in his employ commit any of the prohibited acts upon the licensed premises. Such a burden of care is imposed upon the licensee in order to protect the public from the potentially noxious effects of an inherently dangerous business. We, of course, express no opinion as to the *wisdom* of the legislature's imposing vicarious responsibility under certain sections of the Liquor Code. There may or may not be an economic-sociological justification for such liability on a theory of deterrence. Such determination is for the legislature to make, so long as the constitutional requirements are met.

[5] We must also be extremely careful to distinguish the present situation from the question of *corporate* criminal liability, such as was involved in *Commonwealth v. Liberty Products Company*, 84 Pa. Superior Ct. 473 (1925). For a penetrating inquiry into this latter subject, see Mueller, Mens Rea And The Corporation, 19 U. Pitt. L. Rev. 21 (1957).

[6] For an extremely interesting and incisive analysis of the mens rea requirement in criminal offenses, see Mueller, On Common Law Mens Rea, 42 Minn. L. Rev. 1043 (1958). While we sympathize fully with the author's eloquent plea for a return to the moral implications of criminal guilt, we await further determinations by the Supreme Court of the United States as to whether the rationale of *Lambert v. California*, 355 U. S. 225, 78 S. Ct. 240 (1957), will be extended to all statutory offenses which have been interpreted as not requiring a criminal mens rea. See also Allen, Book Review, 66 Yale L. J. 1120 (1957); Mueller, Mens Rea And The Law Without It, 58 W. Va. L. Rev. 34 (1955).

Can the legislature, consistent with the requirements of due process, thus establish absolute criminal liability? Were this the defendant's first violation of the Code, and the penalty solely a minor fine of from $100-$300, we would have no hesitation in upholding such a judgment. Defendant, by accepting a liquor license, must bear this financial risk. Because of a prior conviction for violations of the Code, however, the trial judge felt compelled under the mandatory language of the statute, Section 494(a), to impose not only an increased fine of five hundred dollars, but also a three month sentence of imprisonment. Such sentence of imprisonment in a case where liability is imposed vicariously cannot be sanctioned by this Court consistently with the law of the land clause of Section 9, Article I of the Constitution of the Commonwealth of Pennsylvania.[7]

The Courts of the Commonwealth have already strained to permit the legislature to carry over the civil doctrine of *respondeat superior* and to apply it as a means of enforcing the regulatory scheme that covers the liquor trade. We have done so on the theory that the Code established petty misdemeanors involving only light monetary fines. It would be unthinkable to impose vicarious criminal responsibility in cases involving true crimes. Although to hold a principal criminally liable might possibly be an effective means of enforcing law and order, it would do violence to our more sophisticated modern-day concepts of justice. Liability for all true crimes, wherein an offense carries with it a jail sentence, must be based exclusively upon personal causation. It can be readily imagined that even a licensee who is meticulously careful in the choice of his employees cannot supervise every single act of

---

[7] Sec. 9. ". . . nor can he be deprived of his life, liberty or property, unless by the judgment of his peers or the law of the land."

the subordinates. A man's liberty cannot rest on so frail a reed as whether his employee will commit a mistake in judgment. See Sayre, Criminal Responsibility For Acts Of Another, 43 Harv. L. Rev. 689 (1930).

This Court is ever mindful of its duty to maintain and establish the proper safeguards in a criminal trial. To sanction the imposition of imprisonment here would make a serious change in the substantive criminal law of the Commonwealth, one for which we find no justification. We have found *no* case in any jurisdiction which has permitted a *prison term* for a vicarious offense. The Supreme Court of the United States has had occasion only recently to impose due process limitations upon the actions of a state legislature in making unknowing conduct criminal. *Lambert v. California,* 355 U. S. 225, 78 S. Ct. 240 (1957). Our own courts have stepped in time and again to protect a defendant from being held criminally responsible for acts about which he had no knowledge and over which he had little control. *Commonwealth v. Unkrich,* 142 Pa. Superior Ct. 591, 16 A. 2d 737 (1940); *Commonwealth v. Schambers,* 105 Pa. Superior Ct. 467, 161 Atl. 624 (1932); *Commonwealth v. Rovnianek,* 12 Pa. Superior Ct. 86 (1899). We would be utterly remiss were we not to so act under these facts.

In holding that the punishment of imprisonment deprives the defendant of due process of law under these facts, we are not declaring that Koczwara must be treated as a first offender under the Code. He has clearly violated the law for a second time and must be punished accordingly. Therefore, we are only holding that so much of the judgment as calls for imprisonment is invalid, and we are leaving intact the five hundred dollar fine imposed by Judge HOBAN under the subsequent offense section.

With respect to defendant's final contention that the increased penalty was improperly meted out under

the provisions of Section 494(a), we adopt the informed opinion of the Superior Court in that respect.

"Section 494, supra, enlarges the penalties on the conviction of a second offender who had violated the provisions of the Code. The indictment averred a prior conviction of the defendant. . . . On motion of *defendant's* counsel, however, the averment of the indictment was removed from the jury's consideration. And to avoid possible prejudice of the defendant by the charge of a former conviction, the indictment was not sent out with the jury. In Commonwealth v. Scott, 54 D. & C. 243, 252 (1945), a distinguished judge said: '1. That the indictment must contain an averment of such conviction and sentence. 2. That where there is no averment of a former conviction in the information, the grand jury may of its own motion, make such presentment in the indictment. 3. That on the trial of the substantive offense, the Commonwealth may not submit evidence of the former conviction, unless the former conviction may be put in evidence to affect his credibility or the defendant has put his character or reputation in evidence, and that the original indictment, with the averment of former conviction, should not be sent out to the jury; but that an exact copy, with the exception of such averment, may be. 4. That after conviction on the substantive averment, the district attorney should present in writing, a suggestion to show cause why the enlarged sentence should not be imposed, to which the defendant may answer.' What was done in the instant case is consistent with the above procedure suggested by Judge HARGEST. The indictment was not sent out with the jury. And after verdict the district attorney filed a suggestion of the prior conviction. In his answer to the suggestion, the defendant admitted his identity as the offender previously convicted and sentenced. When by his admission, defendant was proven to be a second offender un-

der the Liquor Code, the court was bound under section 494 to impose the enlarged penalty there prescribed."

. Judgment, as modified, is affirmed.

CONCURRING AND DISSENTING OPINION BY MR. JUSTICE BELL:

Although the question is close, in my judgment this case is ruled in principle by *Commonwealth v. Sellers,* 130 Pa. 32; *Commonwealth v. Holstein,* 132 Pa. 357; *Commonwealth v. Zelt,* 138 Pa. 615; *Commonwealth v. Johnston,* 2 Pa. Superior Ct. 317; *Commonwealth v. Jackson,* 146 Pa. Superior Ct. 328 (affirmed 345 Pa. 456); *Commonwealth v. Zasloff,* 137 Pa. Superior Ct. 96; *Commonwealth v. Borek,* 161 Pa. Superior Ct. 200. I believe that the distinction which is drawn by the majority is of insufficient weight to distinguish and govern the instant case.

I would affirm the judgment and the sentence on the opinion of Judge HIRT, speaking for a unanimous Superior Court.

DISSENTING OPINION BY MR. JUSTICE MUSMANNO:

The Court in this case is doing what it has absolutely no right to do. It is laying aside its judicial robes and officiating as members of the General Assembly. It is declaring a crime which has no existence in the statute books, it is imposing a penalty which is not authorized by the criminal code.

The defendant John Koczwara owns a restaurant in Scranton where, because of a liquor license issued to him by the Commonwealth of Pennsylvania, he is authorized to sell intoxicating liquor. He was indicted in Lackawanna County for violations of the Liquor Code. At the trial it was established that on several

occasions minors entered the restaurant and purchased beer. The Trial Judge, in sustaining the verdict of the jury which convicted Koczwara on three counts, said in his opinion refusing a motion in arrest of judgment: "In every instance the purchase was made from a bartender, not identified by name, and service to the boys was made by the bartender. There was no evidence that the defendant was present on any one of the occasions testified to by these witnesses, nor that he had any personal knowledge of the sales to them or to other persons on the premises."

Koczwara appealed to the Superior Court which affirmed the convictions. We allowed allocatur.

The Majority of this Court is doing something which can find no justification in all the law books which ornament the libraries and enlighten the judges and lawyers in this Commonwealth. It sustains the conviction of a person for acts admittedly not committed by him, not performed in his presence, not accomplished at his direction, and not even done within his knowledge. It is stigmatizing him with a conviction for an act which, in point of personal responsibility, is as far removed from him as if it took place across the seas. The Majority's decision is so novel, so unique, and so bizarre that one must put on his spectacles, remove them to wipe the lenses, and then put them on again in order to assure himself that what he reads is a judicial decision proclaimed in Philadelphia, the home of the Liberty Bell, the locale of Independence Hall, and the place where the fathers of our country met to draft the Constitution of the United States, the Magna Charta of the liberties of Americans and the beacon of hope of mankind seeking justice everywhere.

The decision handed down in this case throws a shadow over that Constitution, applies an eraser to the Bill of Rights, and muffles the Liberty Bell which many decades ago sang its song of liberation from monarchi-

cal domination over man's inalienable right to life, liberty, and the pursuit of happiness. Our legal system is based on precedent. The decision of today will become a precedent on which future Dracos may feed to their absolutist and tyrannical content.

The Majority Opinion says: "In the instant case, the defendant has sought to surround himself with all the safeguards provided to those within the pale of criminal sanctions. He has argued that a statute imposing criminal responsibility should be construed strictly, with all doubts resolved in his favor."

But what is wrong with that? Why shouldn't the defendant call upon the safeguards which have come down to American freemen through centuries of struggle for maintaining and upholding the dignity of man's right not to be punished for what he has not done, directed, or approved?

The Majority builds its superstructure of rationalization on a spongy foundation of fallacy and misconception. The Majority Opinion says: "It is abundantly clear that the conduct of the liquor business is lawful only to the extent and manner permitted by statute." This is only affirming what was said more fully by the Trial Court, namely: "The liquor business is an unlawful business and its conduct is only lawful to the extent and manner permitted by statute and the licensing of persons to sell liquor and other alcoholic beverages is an exercise of the police power."

The liquor business is *not* an unlawful business. If it is unlawful, then the Commonwealth of Pennsylvania is engaged in an illegal business. Obviously this cannot be so. The liquor business is as lawful as any other business conducted openly in the Commonwealth. The Majority does not save its broad statement that the liquor business is unlawful by adding that it "is lawful only to the extent and manner permitted by statute." In fact, this supposed modification only ac-

centuates the absurdity of the major premise. What the Majority says about the liquor business can equally be said of the milk business because the milk business obviously is lawful only to the extent that those who engage in milking cows, filling milk bottles and distributing them for profit, abide by the laws and regulations of the Commonwealth controlling and regulating the milk business.

The so-called liquor business in Pennsylvania is authorized by the Constitution of the United States* and by the laws of the Commonwealth of Pennsylvania. How then can it be unlawful? That people abuse the consumption of liquor is evident by a glance into any tavern, cocktail lounge or convention, and this includes conventions of people dedicated to upholding the law. However, the imprudently over-abundant individual consumption of liquor has nothing to do with the legality of the business itself.

It is proper and highly commendable, of course, that the Legislature should place, as it has indeed placed, many restrictions on the sale of liquor. It has wisely proclaimed that liquor shall not be sold to minors, it has properly provided that minors shall not be allowed to frequent places where liquor is sold, but it has not said that the illegal sale of liquor can be charged to a person who has not made such a sale, has not directed it, has not condoned it, and is wholly ignorant of it.

The Majority introduces into its discussion a proposition which is shocking to contemplate. It speaks of "vicarious criminal liability". Such a concept is as alien to American soil as the upas tree. There was a time in China when a convicted felon sentenced to death could offer his brother or other close relative in his

---

* The liquor business enjoys the distinction of being the only business which has individually received the imprimatur of the U. S. Constitution (Amendment XXI).

stead for decapitation. The Chinese law allowed such "vicarious criminal liability". I never thought that Pennsylvania would look with favor on anything approaching so revolting a barbarity.

The Majority Opinion attempts to give authority to its legislative usurpation by referring to twenty-five specific acts which are designated as unlawful in Section 494 of the Liquor Code. It is true that the General Assembly has enumerated certain proscribed situations, but nowhere has the Legislature said that a person may be tried and convicted for a personal act committed in the darkness of his absence and in the night of his utter lack of knowledge thereof.

Battling for some solid terrain upon which to stand to uphold its unstable position, the Majority points to an invisible phantom. It seeks to fortify its argument not by what it finds in the Code, but by what it does *not* find in the Code. It asserts that the *omission* of the word "knowingly" from Section 494 "indicates a legislative intent to eliminate both knowledge and criminal intent as necessary ingredients of such offenses." But a person's liberties should not hang on so thin a thread as "indicates." Where the sovereign body of the Commonwealth, the General Assembly, decides that a citizen is to be deprived of his life, liberty, or good name upon the commission of a certain act, it does not merely "indicate" the drastic penalty awaiting the person who violates the specific legislative provision. It specifically and in mandatory language orders the penalty. If the Legislature intended to punish a person for acts committed by another (assuming it had the constitutional power to do so), it would have declared that for certain acts committed within a liquor-dispensing establishment the proprietor will be criminally responsible "whether present or not." But the Legislature did not see fit to add such words. This Court is now adding those words and, in doing so, it is usurping the

functions of the Legislature which, I repeat, it has no authority to do.

The Majority, apparently recognizing the feebleness of the verb "indicates" to support an intention of the Legislature to punish for acts committed without the presence of the accused, attempts to reinforce this frail reed by pumping into its stalk the language of Section 491, namely, "It shall be unlawful (1) for any person, by himself, or by an employe or agent, to expose or keep for sale, or directly or indirectly . . . to sell or offer to sell any liquor within this Commonwealth, except in accordance with the provisions of this act and the regulations of the board."

It then goes on to say: "The Superior Court has long placed such an interpretation on the statute. Commonwealth v. Speer, 157 Pa. Superior Ct. 197, 42 A. 2d 94 (1945)".

But in the *Speer* case the proprietors of the liquor establishment there involved were convicted of *possessing* adulterated liquors. Possession is an offense of which a proprietor may be charged because conceivably he may examine and inspect his stock to see what it embraces, but in this case we have something different. Here the defendant is charged with *doing* what someone else did. He was not charged with knowledge of a status, he was charged with performing a physical act which concededly was not performed by him or even within the periphery of his cognizance. I repeat the Trial Court's findings: *"There was no evidence that the defendant was present on any one of the occasions testified to by these witnesses, nor that he had any personal knowledge of the sales to them or to other persons on the premises."*

While the facts in the *Speer* case are of course distinguishable from the facts in this case, as above shown, I would not accept the *Speer* case as authority in any event because it also makes the wholly insup-

portable statement that: "The liquor business is unlawful." To say that the liquor business is unlawful is to envelop everyone employed in the business, whether he be a clerk in a State Store, the proprietor of a hotel, or the waitress in a restaurant, in a cloud of impropriety and assumed equivocal conduct. This is as unfair as it is contrary to law.

The defendant John Koczwara had been previously convicted of a violation of the Liquor Code and, because of that conviction, the Trial Court imposed, in addition to a fine of $500, a sentence of three months' imprisonment. The Majority Opinion finds the imprisonment part of the sentence contrary to law. Thus, in addition to the other things I have had to say about the Majority Opinion, I find myself compelled to pin on it the bouquet of inconsistency. The Majority says that it cannot permit the sentencing of a man to jail "for acts about which he had no knowledge and over which he had little control."

It says: "Such sentence of imprisonment in a case where liability is imposed vicariously cannot be sanctioned by this Court consistently with the law of the land clause of Section 9, Article I of the Constitution of the Commonwealth of Pennsylvania." But if the Majority cannot sanction the incarceration of a person for acts of which he had no knowledge, how can it sanction the imposition of a fine? How can it sanction a conviction at all?

The Majority enlarges on its inconsistency when it says: "Our own courts have stepped in time and again to protect a defendant from being held criminally responsible for acts about which he had no knowledge and over which he had little control." If it is wrong to send a person to jail for acts committed by another, is it not wrong to convict him at all? There are those who value their good names to the extent that they see as much harm in a degrading criminal conviction as in

a jail sentence. The laceration of a man's reputation, the blemishing of his good name, the wrecking of his prestige by a criminal court conviction may blast a person's chances for honorable success in life to such an extent that a jail sentence can hardly add much to the ruin already wrought to him by the conviction alone.

The Majority extends a sympathetic hand to prevent the jail doors from clanging shut behind John Koczwara. It says: "We would be utterly remiss were we not to do so under these facts." But is it not remiss in refusing to save Koczwara's constitutional prerogatives? Is it not remiss in not striking down this conviction which engrafts upon the criminal code something which up until this time has been unheard of in the Commonwealth of Pennsylvania? Is it not remiss in not reversing a conviction which cannot be based on any written provision of the law? Is it not remiss in giving to a criminal statute a broad interpretation (against the accused) instead of a strict interpretation as our decisions have proclaimed hundreds of times?

I conclude by saying that the Majority has been so remiss in affirming the conviction in this case that I myself would be remiss if I did not dissent against a decision which flouts the Constitution, ignores the Bill of Rights and introduces into the temple of the law the Asiatic rite of "vicarious criminal liability."

––––––

DISSENTING OPINION BY MR. JUSTICE McBRIDE:

I would agree that a man who sells liquor to a minor may be punished even if he did not know that the person to whom he sold was a minor. But in my opinion, the statute does not and cannot validly create an indictable misdemeanor under which a liquor licensee is

punishèd by a fine or imprisonment, or both, for the act of an employee in selling to a minor, where, as here, the act itself is done without the licensee's knowledge, consent, or acquiescence. I would reverse the judgment and discharge the defendant.