## Bavosa License

*Irving L. Epstein*, for appellants.

*Clement J. Reap*, Deputy Attorney General, for appellee.

NEALON, J., April 9, 1962.—This is an appeal by Vito and Theresa Bavosa from an order of the Pennsylvania Liquor Control Board suspending their hotel license for a period of 15 days.

From the testimony and exhibits presented at the hearing on this appeal, we make the following:

### Findings of Fact

1. The Pennsylvania Liquor Control Board issued Hotel Liquor License No. H-1588 to Vito Bavosa and Theresa Bavosa, his wife, for premises known as the "West Side Hotel," located at No. 129-131 South Main Avenue, Scranton, Pennsylvania, for the license year beginning August 1, 1959, and ending July 31, 1960, and said license was renewed successively from August 1, 1960, to July 31, 1961, and August 1, 1961, to July 31, 1962.

2. On July 13, 1960, John V. Pensiero, Enforcement Officer for the Pennsylvania Liquor Control Board, investigated appellants' licensed premises and, as a result of an analysis of 12 liquor bottles by what is known as the Williams Test, a test to determine the proof of liquor, all 12 bottles were seized and transmitted to the chief chemist for the liquor board at Harrisburg, Pennsylvania, for further analysis.

3. Vance Rank, Chief Chemist for the Liquor Control Board, conducted laboratory tests in Harrisburg of the 12 bottles taken from the licensed premises in order to determine (a) the proof of the whiskey, and (b) whether each bottle contained the brand whiskey as called for on the label.

4. Proof of liquor is determined by doubling the alcoholic content by volume; for example, 86 proof whiskey would contain 43 percent alcohol by volume.

5. The laboratory test used by the liquor control board for ascertaining the proof of whiskey consists of taking a measured amount of whiskey, adding a certain amount of water in excess, and then distilling. After the sample has been distilled, the specific gravity is determined and the specific gravity determination is checked against appropriate tables, which will then indicate the percent of alcohol by volume. The percent of alcohol by volume is then multiplied by two and the result would constitute the proof of the whiskey.

6. The laboratory test used by the liquor control board to determine whether each bottle contained the brand whiskey as called for on the label consisted of determining (a) the solid content, which is comprised of the caramel, coloring matter, extractives from the barrel, and smoothing agents, and (b) the proportionate percentage of total acids, volatile acids, fixed acids and esters.

7. Each distiller uses his own formula in determining the solid content and proportionate percentage of acids and esters, and then blends the whiskey to maintain the uniformity of the formula so that there is a minimum of variance in the solid content and proportionate percentage of acids and esters in his product, although there is wide variance between his product and the same proof whiskey blended by other distilleries.

8. The laboratory tests revealed that 7 of the 12 bottles taken from the licensed premises contained less proof, varying from 3.72 degrees proof to 13.5 degrees proof, than the proof called for on the labels.

9. The laboratory tests disclosed that 2 of the 12 bottles contained true samples and were returned to appellants.

10. The laboratory tests disclosed that the remaining 3 bottles of the original 12 contained such wide variations in solid content, total acids, volatile acids, fixed acids and esters, as to establish that these bottles, although containing the required proof, did not contain the brand whiskey called for on the label.

11. All 12 liquor bottles were in the possession of appellants at the time of seizure by the liquor board agents and were prominently displayed on the back bar.

12. Appellants habitually inserted open-end pouring spouts in liquor bottles used on the premises at 129-131 South Main Avenue, Scranton, Pennsylvania.

13. Appellants employed no other bartenders and were the only persons who dispensed liquor from behind the bar, although a night clerk and cleaning woman are furnished with keys and have access to the bar.

## Discussion

In Pennsylvania, the liquor business is unlawful and is lawful only to the extent and in the manner permitted by statute: Commonwealth v. Bienkowski, 137 Pa. Superior Ct. 474. " 'There is perhaps no other area of permissible state action within which the exercise of the police power of the state is more plenary than in the regulation and control of the use and sale of alcoholic beverages' ": Commonwealth v. Koczwara, 397 Pa. 575 (1959).

The sale of alcoholic beverages is permitted in Pennsylvania under the Liquor Code of April 12, 1951, P. L. 90, art. I, sec. 101 et seq., as amended, 47 PS §1-101, which authorizes the issuance of liquor licenses to qualified licensees and also provides for strict regulation and supervision by the Pennsylvania Liquor Control Board. One of the statutory provisions enacted by the legislature to which a licensee must adhere is section 491 of the Act of April 12, 1951, supra, later amended by the Act of July 18, 1961, P. L. 789, sec. 1, which provided, in pertinent part, as follows:

"It shall be unlawful—

"(10) . . . For any licensee or any employee or agent of a licensee or of the board, to fortify, adulterate or contaminate any liquor, except as permitted by the regulations of the board, or to refill wholly or in part, with any liquid or substance whatsoever, any bottle or other container bearing the official seal of the board."

In Commonwealth v. Speer, 157 Pa. Superior Ct. 197 (1945), the Superior Court held that the refilling of bottles, wholly or in part, with other whiskey or fluid such as water, violated section 603 of the Liquor Control Act of November 29, 1933, P. L. 15, Sp. Sess., art. 6, as re-enacted and amended, 47 PS §744-603, which section contains the identical language used in section 491(10). In addition, the court specifically held that it is not necessary to prove the licensee's participation in, or consent to, the adulteration of the liquor, but that the mere possession of adulterated liquor is prima evidence of knowledge of the illegal act and will impose liability unless rebutted. The rebuttal offered by appellants consists of a blanket denial that they personally refilled the liquor bottles involved herein, but this is not enough, because, as pointed out in Speer, supra, the licensee's participation in, or consent to, the adulteration need not be shown as long as they were in possession of the adulterated liquor.

Appellants also contend that most of the whiskey bottles in which lower proof was found were slow-sellers and were on the back bar, capped with open-end pouring spouts, for as long as three years. Consequently, they argued that the discrepancy in proof was due to evaporation created by atmospheric conditions. In this connection, Vance Rank, Chief Chemist for the Liquor Control Board, admitted that proof may be lowered either by the addition of water or by evaporation. He testified that when the cap is removed from a

whiskey bottle and an open-end pouring spout is inserted therein, so that the content of the bottle is exposed to atmospheric conditions, then there could be a lowering of the proof inasmuch as the alcohol would evaporate first, although the extent of the lowering would depend upon the length of time of exposure and the degree of heat and humidity and the conditions of storage. However, assuming we accept appellants' version as explaining the lowering of the proof, it still does not change the finding that the remaining bottles did not contain the brand whiskey as called for on the label. This condition is completely unaffected by evaporation and shows the necessary presence of a human agency in bringing about this change. Therefore, under Speer, supra, inasmuch as there is no rebuttal on this phase of the evidence, the board has made out its case by showing that the adulterated whiskey was in the possession of appellants. This, in itself, is sufficient to sustain the findings of the board.

The court, on appeal, cannot find facts which are not supported by the evidence and may not capriciously disregard competent evidence of violations by the licensee: Janiro Liquor License Case, 163 Pa. Superior Ct. 398 (1948). Moreover, if the court does not find the facts to be otherwise than those found by the board, the court is without power to change the penalty: Ortuglio Liquor License Case, 163 Pa. Superior Ct. 402 (1948). The proceedings before the board are civil in nature and it is sufficient if the offense is established by a preponderance of the evidence: Summit Hill Rod and Gun Club Liquor License Case, 184 Pa. Superior Ct. 584 (1957). The evidence in the instant case supports the board in its conclusions and is sufficient to meet the burden of proof on appeal.

Counsel for appellants, in his brief, requests the court, in the event the board's findings of fact are affirmed, to recommend to the board that it accept an

offer in compromise in view of the fact that this is the first offense. Section 471 of the Liquor Code, 47 PS §4-471, authorizes the board, in its discretion, to accept from the licensee an offer in compromise as a penalty in lieu of such suspension which, in the case of a hotel liquor license, would be $10 for each day of the suspension. While the circumstances of this case may warrant such action, the power to do so is exclusively in the board and the court cannot direct the board to enter into a compromise with appellants: Mami's Liquor License Case, 144 Pa. Superior Ct. 285 (1941).

Now, April 9, 1962, the appeal of Vito and Theresa Bavosa from the suspension of their hotel liquor license as ordered by the Pennsylvania Liquor Control Board is dismissed.