## Commonwealth v. Wydo

*W. Bertram Waychoff*, D.A., for Commonwealth.

*W. Robert Thompson* and *James H. McConomy*, for defendant.

SHUGHART, P. J., Ninth Judicial District, Specially Presiding, November 16, 1964.—On December 6, 1962, an explosion or explosions occurred in the Robena No. 3 Mine of the United States Steel Company at Garards Fort in Greene County, in which 37 miners lost their lives. Immediately after the catastrophe, an intensive investigation was conducted by the Secretary of the Department of Mines and Mineral Industries of the Commonwealth of Pennsylvania, in which the United States Bureau of Mines of the Department of Interior and other groups participated.[1] Following the completion of the investigation, informations were filed by State mine inspectors who participated in the investigation against defendant, Michael Wydo, superintendent of Robena No. 3, and three other mine officials, charging them with violations of certain sections of the Pennsylvania Bituminous Coal Mine Act of July

[1] For further history of the disaster and details of the investigation, see opinions filed November 22, 1963, and April 15, 1964, in the Court of Quarter Sessions of Greene County, Pa., to September sessions, 1963 no. 2; Sur 1, June court, 1963; inquest docket vol. 6, page 408; In re Death of Adam Andrews, Jr., 14 Cumb. 124.

17, 1961, P. L. 659, 52 PS §701-101, et seq. Specifically, Wydo was charged with violations of sections 310, 316(e), 316(g) and 703 of the act.

After the charges were filed, preliminary hearings were waived and the cases returned to court, where the grand jury returned true bills on June 3, 1963. Each defendant was charged in a separate indictment, in which all the violations were charged in one count.

The Hon. John I. Hook, President Judge of Greene County, disqualified himself to preside over the litigation arising from the disaster, and the Hon. Roy I. Carson, former President Judge of Washington County, was assigned to hear the various cases. Judge Carson subsequently asked to be relieved because of the termination of his commission on the first Monday of January 1963. The writer of this opinion was assigned August 23, 1963.

With the concurrence of the then district attorney, Glenn R. Toothman, and counsel for defendant, it was decided to dispose of a petition filed by representatives of certain of the miners killed in the explosion to compel the Coroner of Greene County to conduct an inquest before the criminal cases were tried. On the first Monday of January 1964, W. Bertram Waychoff succeeded Mr. Toothman as District Attorney of Greene County. An opinion and order was filed on November 22, 1963, refusing permission to certain parties to intervene in the inquest proceeding. An opinion and order was filed April 15, 1964, refusing to order the coroner's inquest.

The district attorney selected the case of Commonwealth v. Wydo as the first of the four cases for trial, and it was called for trial on June 15, 1964. At this time, counsel for defendant presented two motions to the court. The first prayed that the district attorney be compelled to elect which of the violations of the act he chose to prosecute and to strike the other charges from the indictment. The second motion consisted of a

demurrer to the portion of the indictment that purported to charge a violation of section 703 of the act. Because it was felt that the evidence offered would make a ruling on both motions unnecessary, decisions on both motions were reserved.

A jury was selected and sworn and testimony offered in behalf of the Commonwealth. At the close of the Commonwealth's case, the trial judge sustained a demurrer to the evidence. The district attorney then asked for further argument on the demurrer for the purpose of having the order set aside. The trial judge indicated that further argument would be heard after the record of the testimony was filed. The testimony has been transcribed, written briefs have been filed and the matter was orally argued before the trial judge on October 19, 1964.

The testimony offered by the Commonwealth would support a finding or findings that after the explosion on December 6, 1962, five violations of the Pennsylvania Bituminous Coal Mine Act were found to exist in the mine. There was no evidence presented from which an inference could be drawn that any of these violations caused or contributed to the explosions, and, as we understand, the Commonwealth does not so contend. The sole evidence to connect defendant Wydo to these violations was that at and prior to the time the violations were discovered, he was superintendent of Robena No. 3 Mine.

Specifically, evidence was offered that:

1. The contractor box on the Goodman continuous mining machine no. 47 was improperly entered from the bitting motor, because the cable entered the box without either (a) Quick-lok disconnect, or (b) a proper packing gland: N.T. 75.

2. No. 43 Goodman continuous mining machine had an entry in the motor box in excess of .004 of an inch: N.T. 78.

3. On No. 43 Goodman, the packing gland from the trailing cable was improperly packed: N.T. 78.

4. Again, on No. 47 Goodman, in the emergency stop switch, the wires were entered through an opening on top, rather than through an aperture on the switch itself: N.T. 79.

5. On the Jeffrey fan, the entrance was effected with a flat, rather than a round, trailing cable without adapter: N.T. 81.

The above deficiencies are prohibited by various provisions of sections 310 and 316 of the Pennsylvania Bituminous Coal Mine Act.

Section 301 of the act provides, inter alia, that: "It shall be the duty of the mine foreman and superintendent to see that the requirements of this article (article III under which both sections 310 and 316 fall) for the installation and maintenance of electrical equipment are observed in all coal mines". (Portion in parenthesis added.)

Section 703 of article VII of the act provides, inter alia:

"Any person who shall intentionally or carelessly disobey any order given in carrying out the provisions of this act, . . . or who *neglects or refuses* to *perform the duties* required of him by this act, . . . or who violates any of the provisions or requirements thereof, shall be deemed guilty of a misdemeanor, and shall, upon conviction . . ." be subject to pay "a fine not exceeding two hundred dollars ($200) or imprisonment in the county jail for not more than three months, or both. . . ." (Italics supplied.)

In essence, the Commonwealth contends that section 301 imposes a duty on the superintendent to see that the requirements as to electrical equipment are met, and evidence of the existence of defects convicts him of neglect and subjects him to criminal responsibility.

Robena Mine No. 3 is a huge complex in which many

men are employed. Subordinate to the superintendent, Wydo, there were 26 foremen and assistants, and approximately 50 repairmen and/or mechanics. These constituted the operating personnel of the mine.

The testimony of the Commonwealth discloses that there were hundreds of electrical connections at the face of the mine (N.T. 51), and that some of the defects which appeared here could not be discovered except by disassembling portions of the machinery (N.T. 67). Further, the testimony revealed that the emergency stop switch on the No. 47 Goodman which was defective was very inaccessible, and could only be reached with great difficulty: N.T. 67, 83. In totality, the circumstances relating to every one of the violations was such as to negate any inference that defendant Wydo could have discovered them, and, in fact, it is not contended that he was aware of any of them, prior to their discovery as the result of a very intensive investigation.

It may be assumed that the legislature was fully apprised of the complexity of the bituminous mining operation when it enacted the Pennsylvania Bituminous Coal Mine Act. Their awareness of the superintendents' and other mining supervisors' need for information that was gathered through the senses of all employes in the mining operation to avoid hazards is disclosed by several provisions of the act. Following section 301, quoted above, which imposes the duty on the mine superintendent to see that the requirements of article III are met, we find the following provisions: In section 306, whoever observes a defect in any electrical equipment in a mine is charged with the responsibility of promptly reporting the occurrence to a mine official. Section 316(h)(1) directs the person who observes the presence of gas on the flame of a safety lamp to shut off the current "and report the matter to a mine official". Section 316(h)(5) requires that if any

electric sparking be produced in the gassy portion of a mine, the power shall be shut off "and the occurrence shall be reported to a mine official". Section 317 (a) provides for the inspection of motors by the mine electrician, or a "person designated by him", at certain specified intervals.

If it were not otherwise obvious, the foregoing sections disclose a clear legislative intention that the mine superintendent shall delegate the duties imposed upon him to others. Under these circumstances, when the legislature imposed criminal liability upon "one who neglects or refuses to perform duties required of him", it did not intend to impose criminal liability on one who was without personal negligence or fault, and solely because of a violation that existed without his knowledge, and one that he could not be expected to discover.

There are certain situations in which statutes have been enacted that impose vicarious criminal liability on persons for acts or omissions of another. The first question which is posed by the situation before us is whether the legislature intended to impose vicarious criminal responsibility upon a mine superintendent for acts or omissions of those under his supervision, and without negligence or fault on his part: Commonwealth v. Koczwara, 397 Pa. 575, 582.

Section 703, which provides for the criminal penalties under the act, first imposes liability upon one who intentionally or carelessly disobeys certain orders. The next portion imposes responsibility upon one "who *neglects* or refuses" to perform any duties required of him by the act. There is no evidence of any refusal by Wydo to perform any duty. The question then becomes whether, as contended by the Commonwealth, the legislature intended that the mere existence of a violation of the act in the mine resulted in an inference of ne-

glect on the part of the superintendent of the mine, and thus subjects him to criminal liability.

In civil cases, it is well established that the mere happening of an accident or injury cannot presumptively establish negligence: Lear v. Shirk's Motor Express Corporation, 397 Pa. 144. When the legislature employed the words "neglects to perform" a duty, it must be deemed to have intended that conduct either of action or omission on the part of defendant be shown that falls below the standard of due care. In the instant case, neglect would consist of knowledge of the violation and a failure on the part of defendant to act, or proof of circumstances that would give rise to an inference that he should have known of the violation. There is a complete lack of proof of either. The burden rested upon the Commonwealth to prove neglect, and not on defendant to prove its absence, as contended by the Commonwealth.

If the legislature intended to impose vicarious liability upon the supervisory staff of the mine, it certainly could have so stated, but it did not. The case of Commonwealth v. Koczwara, cited above, was decided November 25, 1959, more than a year and a half before the passage of the Pennsylvania Bituminous Coal Mine Act. In that case, the court held that a penalty including imprisonment could not be imposed upon a person for a vicarious offense, and stated, in fact, that no cases upholding such a penalty had been found in *any* jurisdiction: Page 586. The fact that the legislature has imposed a penalty for violation of the act of both fine and imprisonment is evidence of a lack of intention to impose vicarious liability upon anyone. Section 52(4), Statutory Construction Act of May 28, 1937, P. L. 1019, 46 PS §552.

The inference is plain from the testimony in this case that literally hundreds of violations of the provisions of the Coal Mine Act, such as those here involved, could be present without the personal knowl-

edge of those in supervisory capacities. If the existence of such violations were to result in vicarious criminal liability of the supervisors, it is evident that such persons would be subject to repeated, if not continuous, criminal prosecutions. As suggested by counsel for defendant, in such a situation no one would accept a supervisory position. Even if such drastic result did not follow, mining operations would be severely hampered.

The bituminous coal mining industry is one fraught with danger and hazards, but it is also a most important industry of this Commonwealth. The serious economic results of the closing of the mines has occasionally been experienced. It is very clear that the imposition of vicarious criminal repsonsibility for violations such as those proved by the Commonwealth would very seriously interfere with coal production. We cannot conclude that such an absurd or unreasonable result was intended by the legislature: Section 52(1), Statutory Construction Act, supra.

The Commonwealth has cited a number of cases to us dealing with interpretations of the Liquor Code of April 12, 1951, P. L. 90. We have considered these cases, but believe that they are not controlling in an effort to find and apply the intention of the legislature. A fundamental difference exists between regulations respecting the liquor business and the bituminous coal mining industry. "It is abundantly clear that the conduct of the liquor business is lawful only to the extent and manner permitted by statute": Commonwealth v. Koczwara, supra, page 581. It is equally clear that the operation of the great and important mining industry is lawful, and becomes unlawful only insofar as certain activity is proscribed by legislative enactments.

For the reasons given, we conclude that the legislature did not intend to impose vicarious criminal responsibility upon those in supervisory positions in the mines. Since such a finding is necessary for a convic-

tion of this defendant, he is entitled to a dismissal of the charges.

The Commonwealth admits that the indictment contained multiple charges in a single count. Evidence was offered in support of all charges except the allegation of the final paragraph, which charged defendant with a violation of section 703 of the act "by ordering the power to be turned on (after the first explosion) without having checked the cause of the failure or the condition of the mine. . . ." The portion in parentheses is added by the writer of this opinion.

The Commonwealth argues that the court improperly excluded evidence as to this alleged violation. When the motion to elect and the demurrer were filed, the trial judge reserved his ruling and suggested that evidence be offered first by the Commonwealth as to all other alleged violations. This procedure was followed. The record discloses (N.T. 87) that at the conclusion of the testimony of the witness Krek, the district attorney offered into evidence all his exhibits. After a 10-minute recess, the trial resumed, and the district attorney stated (N.T. 89): "The Commonwealth has entered all its exhibits and now rests". The trial judge then inquired of the defense if he was correct in assuming that the objections embodied in the two motions were moot. Defense counsel did not directly respond to the inquiry, but impliedly assented to the suggestion by entering a demurrer to the evidence. The jury was then excused, and the court heard argument on the demurrer. After argument, the court adjourned until 10 a.m. the following day. When court reconvened on June 17th, an order sustaining the demurrer was entered. The district attorney then moved to strike the demurrer, and also stated that the Commonwealth was prevented from introducing evidence as to a violation of section 703 by "reenergization of the mine without ascertaining the cause of the failure of the fan": N.T. 92. It is correct, as stated by the

district attorney, that the trial judge suggested that evidence of the other violations be introduced first, but the trial judge at no time precluded the Commonwealth from offering any evidence respecting reenergizing the mine. There was no offer of such evidence, and no ruling on any such offer. In the absence of such an offer, there was and is no ruling of the court on which to predicate an objection. There is, therefore, nothing in this regard requiring further comment.

The initial contention of defendant, in connection with the present motion by the Commonwealth, is that this court does not have the power to review its action in sustaining the demurrer. Because of the importance of the decision, not only to this defendant but to the other three men who are under similar indictments, we first passed upon the questions involving substantive law. Further, it is fair to state that at the time the demurrer was entered, counsel for defendant, the district attorney, and the trial judge were of the opinion that the order sustaining the demurrer could be reviewed by the trial judge after the record was transcribed and after further argument.

It is well established that the Commonwealth has a right of appeal from an order sustaining a demurrer to the evidence: Commonwealth v. Heller, 147 Pa. Superior Ct. 68; Commonwealth v. Kerr, 150 Pa. Superior Ct. 598. Numerous cases have also indicated that the trial court may not subsequently alter its action on a demurrer: Commonwealth v. Fox, 181 Pa. Superior Ct. 292. Notwithstanding this rule, because of the misunderstanding at the time the demurrer was sustained, and because of the importance of a definite ruling on the merits, we have based our decision on the substantive rather than procedural questions involved.

## ORDER

And now, November 16, 1964, after careful consideration, it is ordered and decreed that the demurrer

of defendant, Michael Wydo, to the Commonwealth's evidence be and is hereby sustained, and it is further directed that said defendant be discharged.