In the Matter of Revocation of Catering Club Liquor License No. CC-5470, Issued to Fraternal Order of Eagles Easton Aerie No. 111. Commonwealth of Pennsylvania, Pennsylvania Liquor Control Board, Appellant.

Argued April 7, 1977, before Judges KRAMER, WILKINSON, JR. and BLATT, sitting as a panel of three.

J. *Leonard Langan,* Assistant Attorney General, with him *Harry Bowytz,* Chief Counsel, and *Robert P. Kane,* Attorney General, for appellant.

*Robert A. Freedberg,* with him *Justin D. Jirolanio,* for appellee.

OPINION BY JUDGE WILKINSON, JR., May 4, 1977:

The Pennsylvania Liquor Control Board (Board), after a citation and hearing, revoked the appellee's catering club liquor license[1] and forfeited its bond based on the following findings of fact:

1. The licensed organization, by its servants, agents or employes permitted lewd, immoral and improper entertainment on the licensed premises, on October 24, 1974.

2. The licensed organization, by its servants, agents or employes, permitted persons to engage in acts of deviate sexual intercourse on the licensed premises, on October 24, 1974.

3. The licensed organization permitted entertainers to contact and/or associate with pa-

---

[1] The number of the club's license appears at some points in the record as CC-5470 and others as CC-5476.

trons on the licensed premises, on October 24, 1974.

4. The licensed establishment operated by the licensee was conducted in a noisy and/or disorderly manner, on October 24, 1974.

5. The licensed organization, by its servants, agents or employes sold liquor and/or malt or brewed beverages on the licensed premises to non-members without prior arrangements for such services, on October 24, 1974.

On appeal, the Court of Common Pleas held de novo hearings on September 3, 1975, January 22, 1976 and March 3, 1976. Based on the evidence presented the trial judge found that the incidents alleged in the citation occurred as found by the Board, but concluded the incidents had not been ''permitted'' by the licensee or its duly authorized agents or servants and modified the penalty from revocation to suspension for 60 days. We disagree and must reverse.

As the uncontroverted evidence establishes, an enforcement officer of appellant went to the appellee club on the night of October 24, 1974 at 9 P.M. He was not a member but said he wanted to apply to be a member to attend a stag show to be held that evening. A trustee of appellee was at the door, signed his application as a sponsor, and directed him to a room where he paid $5.00 initiation fee and $10.00 for a non-beneficial membership. He proceeded to the bar area where there were approximately 100 male patrons. After two drinks, the enforcement officer was told to line up with some 30-35 other applicants to be initiated. This was accomplished. On return to the bar area there appeared to be approximately 250 male patrons present. At that point the record shows:

The master of ceremonies appeared on the stage located in a room to the rear of the bar and stated the girls were coming on and re-

quested the audience to do anything but don't hurt the girls.

Two girls, individually and as a "team," then engaged in the conduct described in the findings of fact of both the Board and the trial court. This "show" lasted from 9:30 P.M. until 11:15 P.M. with a 10 minute "intermission."

The appellee's case was built on the fact that the president of the appellee was also chairman of the entertainment committee and refused to divulge to the trustees the nature of the planned entertainment. It also appears at the end of the term he was not re-elected. Based on this, the trial court found that the offenses were not "permitted" in the sense that they were not authorized by the trustees or the members. That the law of Pennsylvania is to the contrary is clearly set forth in *Commonwealth v. Koczwara*, 397 Pa. 575, 155 A.2d 825 (1959), *cert. denied*, 363 U.S. 848 (1960), where a licensee was held criminally liable for acts of his agent when he was not even aware they occurred. Here there is no criminal action and the acts took place in the presence of the trustees and the members. Indeed, there was sufficient advance word that the obscene show was to take place that a member's wife called appellant to complain.

However, we cannot conclude this opinion without observing that the membership of the club licensee, contrary to the trial court's concern, cannot profess innocence or lack of participation in the planning and staging of this show. Two hundred and fifty members and guests, 30 to 35 of whom were new members initiated that night, assembled to view this obscene performance. The deviate acts were performed with the cooperation of members or guests participating, including the master of ceremonies, extending over almost a two hour period. There was no evidence that any trustee or member protested or left.

Accordingly, we will enter the following

ORDER

AND Now, May 4, 1977, the Order of the Court of Common Pleas of Northampton County, Criminal Division, No. 50 May Term, 1975, Misc., is reversed and the Order of the Pennsylvania Liquor Control Board, dated June 24, 1975, revoking Catering Club Liquor License, No. CC-5476, issued to FRATERNAL ORDER OF EAGLES, EASTON AERIE No. 111, for premises on E. S. Route 115, situate in Forks Township, County of Northampton, and forfeiting the bond filed is hereby reinstated, effective at such date as is fixed by the Pennsylvania Liquor Control Board, but not later than 30 days after the date hereof.