439 A.2d 1241

**COMMONWEALTH of Pennsylvania**

v.

**Guy Earl HENNEMUTH.**

Superior Court of Pennsylvania.

Argued Feb. 11, 1981.

Filed Jan. 14, 1982.

362

Howard T. Gilfillan, Pittsburgh, for appellant.

Stella L. Smetanka, Assistant District Attorney, Pittsburgh, for Commonwealth, appellee.

Before BROSKY, DiSALLE and SHERTZ, JJ.

SHERTZ, Judge:

Appellant, Guy Earl Hennemuth, upon summary conviction under the Motor Vehicle Code for operating a vehicle with excessive axle weight, was sentenced to pay $910 by a district justice.[1]  Following a hearing *de novo* before the Court of Common Pleas of Allegheny County, Appellant was again found guilty.  In this appeal from the judgment of sentence,[2] he asserts three grounds for reversal:  (1) the trial

[1].  Pursuant to 75 Pa.Cons.Stat.Ann. § 4945(b) (Purdon 1977).

[2].  Although Appellant filed no post-trial motions, the record reveals that the lower court did not comply with Rule 1123(c), Pa.R.Crim.P.  "It is because of the misconception regarding the applicability of Rule 1123 to the summary proceedings by both appellant and the lower court that we must decline to find a knowing and intelligent waiver by appellant in the instant case for his failure to file post trial motions." *Commonwealth v. Koch*, 288 Pa.Super.Ct. 290, 296, 431 A.2d 1052, 1056 (1981).  While the usual remedy in such instances has been to remand for filing of post-trial motions, this Court can reach the merits where the nature of the offense, the facts and

court erred in holding him strictly liable for violation of the Code; (2) the Commonwealth failed to sustain its burden of proof; and (3) the police lacked reasonable belief, or probable cause to believe, a violation of the Motor Vehicle Code had occurred. We find no merit in any of these assertions and we therefore affirm the trial court's judgment of sentence.

The facts of this case may be briefly summarized. Appellant was driving a truck loaded with coal when he was stopped by a state police officer working a weight detail. The officer testified at trial that the tires of the vehicle "were squashed down to the highway," N.T. at 4, and that the coal was "heaped up in the bed of the truck." *Id.* at 7. Appellant thereupon produced a weigh-master's certificate, obtained at the coal company, which showed the vehicle's gross weight to be 73,720 pounds.[3] Using a portable scale, one of the weight enforcement agents of the Department of Transportation weighed the center rear axle of the truck and found it to be 5,950 pounds over the 18,000 pound permissible maximum axle weight.[4]

Appellant first argues that where, as here, in order to assure compliance with maximum statutory weights, one has made a substantial effort to comply with the Code by weighing the vehicle on a stationary platform scale, which had been inspected and certified only three days earlier, such conduct constitutes a defense to prosecution for exceeding those statutory maximums. That is, one cannot be held strictly liable for violating the weight regulation. We disagree.

■ The legislature, by virtue of its police power, may define a crime so that proof of criminal intent is not necessary. *Commonwealth v. Koczwara,* 397 Pa. 575, 155 A.2d

circumstances of the case, and judicial economy so permit. *Id.,* 288 Pa.Super. at 297, 431 A.2d 1056.

**3.** The maximum gross weight allowed by the Code was 73,280 pounds. 75 Pa.Cons.Stat.Ann. § 4941 (Purdon 1977).

**4.** 75 Pa.Cons.Stat.Ann. § 4943(a) (Purdon 1977).

825 (1959). The reason for such an abrogation of criminal intent has been explicated as follows by our Supreme Court:

In recent decades . . . many states have enacted detailed regulatory provisions in fields which are essentially non-criminal, e.g. pure food and drug acts, speeding ordinances, building regulations, and child labor, minimum wage and maximum hour legislation. Such statutes are generally enforceable by light penalties, and although violations are labelled crimes, the considerations applicable to them are totally different from those applicable to true crimes, which involve moral delinquency and which are punishable by imprisonment or another serious penalty. Such so-called statutory crimes are in realty an attempt to utilize the machinery of criminal administration as an enforcing arm for social regulations of a purely civil nature, with the punishment totally unrelated to questions of moral wrongdoing or guilt. It is here that the social interest in the general well-being and security of the populace has been held to outweigh the individual interest of the particular defendant.

*Id.*, 397 Pa. at 580, 155 A.2d at 827–28. Applying a similar rationale, this Court has stated:

Whether a given statute is to be construed as requiring criminal intent is to be determined by the court, by considering the subject matter of the prohibition as well as the language of the statute, and thus ascertaining the intention of the legislature. . . . The legislature may define a crime so that proof of criminal intent is not necessary.

*Commonwealth v. Black*, 251 Pa.Super.Ct. 539, 542, 380 A.2d 911, 913 (1977) (citation omitted).

■ Bearing in mind these principles, we turn to the then pertinent Motor Vehicle Code Sections.[5] Section 4945 provided: "*(A)ny person* operating a vehicle or combination with a weight on an axle or pair of axles exceeding the maximum axle weights allowed by section 4943 . . . is guilty of a summary offense." Section 4943(a) provided: "*No*

5. Both sections have since been amended.

*motor vehicle* . . . shall when operated upon a highway, have a weight . . . in excess of . . ."

We note first that the statute uses the language *"any person"* and *"no motor vehicle"* without qualification. Given the obvious purpose of the statute, i.e. to regulate the weight of motor vehicles in order to prevent damage to public roads and to insure the safety of persons travelling over them, *See, Commonwealth v. Tirpak*, 271 Pa.Super.Ct. 357, 413 A.2d 705 (1979), *Commonwealth v. Burall*, 146 Pa.Super.Ct. 525, 22 A.2d 619 (1941), it is evident that the legislature intended precisely what the words "any person" and "no motor vehicle" unequivocally state. Anyone, regardless of intent, who operates a motor vehicle the gross axle weight of which exceeds that allowed by statute, is guilty of a summary offense. Had the legislature intended to punish only those persons who acted with criminal intent, it would have so stated. By excluding all reference to terms such as "knowingly," "willfully," "intentionally", etc., the legislature intended to prohibit absolutely the act of operating an overweight vehicle. *See Appeal of Da Pra*, 425 Pa. 94, 227 A.2d 491 (1967); *Koczwara*, 397 Pa. at 583, 155 A.2d at 829. By including the reference to "any person" the legislature intended to impose criminal sanctions on *any person* who violated the statute. *See e.g., D'Ambrosio v. City of Philadelphia*, 354 Pa. 403, 47 A.2d 256 (1946) (construing language "no person" as used in the Motor Vehicle Code to include minors).

In addition to the purpose of the statute and its plain language, the fact that it promulgates a regulatory scheme, or, in the language of *Koczwara*, "social regulations of a purely civil nature," *Id.* 397 Pa. at 580, 155 A.2d at 827, and the fact that it establishes reasonable fines commensurate with the degree of infraction, leads us to conclude that the legislature intended the statute to be enforced without regard to criminal intent and we so hold.

With respect to Appellant's second argument, that the Commonwealth did not sustain its burden of proof beyond a reasonable doubt, the record simply does not

support such a contention. The Commonwealth need not prove the accuracy of Commonwealth road scales in order to prove its case beyond a reasonable doubt. *Commonwealth v. Snyder*, 50 D & C 2d 268 (1970) (arresting officer's testimony and his certification as to weight of the truck mandates affirmance where the officer testified in contradiction of defendant's testimony that the scales were inaccurate because the approaches were not level); *Commonwealth v. Bell*, 40 D & C 2d 433 (1966) (weighing officer's testimony and certificate of weight constitute *prima facie* evidence of overload; defendant has burden of proving scales inaccurate). Appellant nonetheless argues that given the discrepancy in weight recorded on the Commonwealth's scale as compared with the coal company scale, there were present five factors [6] which necessitated proof by the Commonwealth of the accuracy of the Commonwealth's scale. We reject such a contention. The Commonwealth introduced the testimony of the state trooper, and of the Department of Transportation agents, who were certified weighmasters, to the effect that the axle weight violated the statutory maximum. In addition, the Commonwealth introduced evidence showing its scale to be currently certified. Whether Appellant is arguing sufficiency of the evidence [7] or weight of the

**6.** Appellant cites the following factors in support of this assertion:
1. Constant, rough use of the portable scales employed by the state . . .;
2. The slant of the road bed which may have affected the accuracy of the scale . . .;
3. The apparent unfamiliarity of Commonwealth's agents with bogie-system axles . . .;
4. The possible failure by Commonwealth's agents to make axle-to-axle measurements . . .;
5. The relative inaccuracy of portable scales when compared to stationary scales . . . .
Brief for Appellant at 14–15. Our review of the record reveals that testimony elicited by Appellant did not establish numbers 1, 2, 4 and 5. He also failed to establish the relevance of number 3. Therefore, Appellant did not rebut the *prima facie* showing of guilt, by casting doubt on the accuracy of the Commonwealth's scales, as he contends.

**7.** The test of sufficiency of the evidence is whether, accepting as true all the evidence presented by the prosecution and all reasonable inferences therefrom, upon which the jury could properly have based

evidence [8] is unclear. Under either standard, however, we find no merit based upon our review of the record.

In his third and final argument, Appellant contends that the action of the state trooper, in stopping the truck, was not predicated upon reasonable belief, or upon probable cause to believe, that the Motor Vehicle Code had been violated.[9] Once again, we disagree.

In *Commonwealth v. Caporiccio*, 210 Pa.Super.Ct. 230, 232 A.2d 42 (1967), this Court stated:

> "It is the police officer's duty, under the Vehicle Code, based on his experience in truck weights, to make an estimate, and if the physical facts are such, as in this case, to indicate that the weight is beyond the permissible limits, the truck must be weighed to ascertain, if the truck is, in fact, in violation of the law."

Id., 210 Pa.Super. at 232, 232 A.2d at 44. *See* also, *Commonwealth v. Burrell*, 286 Pa.Super.Ct. 502, 429 A.2d 434 (1981) (spot check for Motor Vehicle Code Violation illegal; police may stop automobile if they reasonably suspect possible violation).

The record reveals that the state trooper who stopped Appellant's truck had 13 years experience working weight details. While so engaged in this instance, he observed the truck which was "heavily loaded", N.T. at 4, with coal

its verdict, it is sufficient in law to prove beyond a reasonable doubt that the defendant is guilty of the crime. *Commonwealth v. Smith*, 283 Pa.Super.Ct. 360, 423 A.2d 1296 (1981).

**8.** Before a new trial can be awarded on the ground that the verdict is against the weight of the evidence, it must appear from the record that the verdict of the trier of fact was "so contrary to the evidence as to shock one's sense of justice and to make the award of a new trial imperative, so that right may be given another opportunity." *Commonwealth v. Barnhart*, 290 Pa.Super.Ct. 182, 185, 434 A.2d 191, 192 (1981).

**9.** Appellant has asked this Court to "reverse" on this basis. Brief for Appellant at 19. The appropriate relief, were we to decide this issue favorably to Appellant, would be to suppress the evidence of the illegal stop. *See*, e.g., *Commonwealth v. Greber*, 478 Pa. 63, 385 A.2d 1315 (1978), *Commonwealth v. Lehman*, 265 Pa.Super.Ct. 480, 402 A.2d 539 (1978).

"heaped up in the bed", *Id.* at 7, in a way which was not "normal" *Id.* at 7. In addition, the officer stated: "The tires were squashed down to the highway and it was this officer's opinion that he was in violation of the particular weight class", *Id.* at 4. Under these circumstances, we hold that the state trooper did have an "articulable and reasonable suspicion" sufficient to permit him to stop the vehicle in question. *Commonwealth v. Caporiccio*, 210 Pa.Super. at 232, 232 A.2d at 44.[10]

Judgment of sentence affirmed.

DiSALLE, J., concurs in the result.

Decision was rendered prior to DiSALLE and SHERTZ, JJ., leaving the bench of the Superior Court of Pennsylvania.

---

**10.** It should be noted that we are here confronted with a regulatory stop in which the state trooper exercised discretion in that he singled out particular vehicles for weighing, thus necessitating an articulable and reasonable suspicion that the truck was indeed overweight. *See, Delaware v. Prouse*, 440 U.S. 648, 99 S.Ct. 1391, 59 L.Ed.2d 660 (1979).