531 A.2d 90

Anthony Iron & Metal Co., Petitioner *v.* Commonwealth of Pennsylvania, Department of Transportation, Respondent.

Argued May 21, 1987, before Judges DOYLE and PALLADINO, and Senior Judge BLATT, sitting as a panel of three.

*William Gleason Barbin,* with him, *Andrew J. Gleason, Gleason, DiFrancesco, Shahade & Markovitz,* for petitioner.

*Stephen F. J. Martin,* Assistant Counsel, with him, *Robert H. Raymond, Jr.,* Assistant Chief Counsel, *Henry G. Barr,* General Counsel, *Spencer A. Manthorpe,* Chief Counsel, for respondent.

OPINION BY JUDGE PALLADINO, September 15, 1987:

Anthony Iron and Metal Company (Petitioner) appeals from an order of the Pennsylvania Department of Transportation (DOT) which suspended Petitioner's special hauling privileges for a period of thirty days. We affirm.

Petitioner is a company engaged in the business of purchasing heavy construction equipment and leasing out the equipment either fully manned and permitted or in a "bare posture", that is, without permit or operator. In the course of its business, Petitioner often has occasion to apply for special permits from DOT for the privilege of hauling overweight or oversize loads on state highways.

Fayette Trucking Company (Fayette) is a corporation engaged in the business of hauling heavy equipment. On January 3, 1984, DOT ordered Fayette's special hauling privileges suspended for a period of ninety days for knowingly altering a permit. Fayette appealed, and on March 28, 1985, in an unpublished opinion, this Court affirmed DOT's order. *Fayette Trucking, Inc. v. Pennsylvania Department of Transportation,* (No. 310 C.D. 1984, filed March 28, 1985). The suspension went into effect on May 6, 1985.

On June 7, 1985, one month later, Fayette entered into a sale/lease-back arrangement with Petitioner whereby Petitioner bought six of Fayette's heavy trucks and then immediately leased them back to Fayette.

On June 21, 1985, DOT issued special hauling permit No. 684234 to Petitioner for a truck bearing registration (tag) number 94618CG. Three days later, on June 24, 1985, a state police officer stopped a vehicle owned and operated by Fayette which was carrying an overweight load. The truck, which had an assigned registration (tag) number 86737CG, instead bore registration number 94618CG and displayed special hauling permit No. 684234, the permit previously issued to Petitioner.

On October 18, 1985, following the presentation to the Secretary of Transportation of a petition for order to show cause, the Secretary issued an order to Petitioner and Fayette to show cause why the special hauling privileges of each should not be suspended. After recounting the facts concerning the sale/lease-back arrangement and the incident whereby a Fayette truck displayed a permit and registration issued to Petitioner, the petition alleged that "Anthony was involved in the improper use of special hauling permits for the movement of a vehicle under suspension by the Department, all in violation of Sections 179.3, 179.8, 197.9

[sic] and 179.10 of Chapter 179 of department regulations (Oversize and Overweight Loads and Vehicles)."[1]

Following a hearing on December 17, 1985 before a presiding officer of DOT, the presiding officer issued a proposed report containing findings of fact and ordering that Petitioner's special hauling privileges be suspended. The presiding officer found that Petitioner was not responsible for Fayette's use of the completely unpermitted truck on June 24, 1985. The switching of the registration plate and hauling permit was found to be solely Fayette's responsibility. However, the presiding officer specifically found that "Anthony Iron and Metal, through one of its partners, was aware that Fayette was subject to a ninety (90) days suspension at No. 002 A.D. 1983 when it entered into the sale and lease-back arrangement on June 7 and that the purpose of this arrangement was to circumvent the effect of the suspension."[2] The proposed report ordered Petitioner's special hauling privileges suspended for thirty days.[3]

Petitioner filed exceptions to the proposed report alleging that the finding and conclusion that Petitioner had participated in a scheme to circumvent suspension were both erroneous as a matter of law and not supported by substantial evidence on the record. On July 21, 1986, DOT denied all exceptions and ordered the thirty day suspension. This appeal followed.

Petitioner contends that DOT's findings of fact are unsupported by substantial evidence and that DOT's legal conclusions are erroneous. In addition, Petitioner contends that DOT's petition for order to show cause

---

[1] Department of Transportation petition for order to show cause at 3, certified record at 6.

[2] Finding of fact No. 24, proposed report at 5.

[3] The proposed report also ordered Fayette's privileges suspended for a period of six months. That portion of the order is not a subject of this litigation.

failed to provide proper notice of the conduct alleged to be unlawful and therefore that its constitutional guarantees of due process of law were violated.

Our scope of review of administrative agency orders is limited to whether the agency committed an error of law or violation of constitutional right, or whether necessary findings of fact are supported by substantial evidence. *Estate of McGovern v. State Employees' Retirement Board,* 512 Pa. 377, 517 A.2d 523 (1986).

With regard to Petitioner's due process challenge, we note that Petitioner failed to raise any allegation of improper notice in its exceptions to the proposed report. Rule 1551 of the Pennsylvania Rules of Appellate Procedure provides that "review of quasi-judicial orders shall be heard by the court. No question shall be heard or considered by the court which was not raised before the government unit." The rule does list certain exceptions,[4] however those exceptions are not applicable to the case at bar. Moreover, "it is an established principle of law that the *only* issues which the reviewing court may address, on appeal from a final order of an adminis-

---

[4] Rule 155(a) states:

No question shall be heard or considered by the court which was not raised before the government unit except:

(1) Questions involving the validity of a statute.

(2) Questions involving the jurisdiction of the government unit over the subject matter of the adjudication.

(3) Questions which the court is satisfied that the petitioner could not by the exercise of due diligence have raised before the government unit. If, upon hearing before the court, the court is satisfied that any such additional question within the scope of this paragraph should so be raised it shall remand the record to the government unit for further consideration of the additional question.

The court may in any case remand the record to the government unit for further proceedings if the court deems them necessary.

trative agency, are those which have been raised in exceptions to the agency." *Teamsters Local Union 77 v. Pennsylvania Labor Relations Board,* 89 Pa. Commonwealth Ct. 433, 492 A.2d 782 (1985). Accordingly, Petitioner's allegation of improper notice is deemed waived.[5]

With regard to the merits, Petitioner initially contends that the finding that Petitioner knowingly entered into a sale/lease-back arrangement with Fayette for the purpose of circumventing Fayette's suspension is not supported by substantial evidence. We disagree.

Michael L. Corn, Vice-President of Operations for Petitioner and Jan Kitka, President of Fayette, both testified at the hearing regarding the circumstances surrounding the sale/lease-back arrangement. Corn testified that as Vice-President of Operations, he had participated in drawing up the lease arrangement with Fayette and that "to the best of my knowledge, Anthony Iron & Metal did not know Fayette was under suspension."[6] Kitka, on the other hand, stated the following under cross-examination:

> Q: Well, you mentioned that you had discussed with Ray Anthony[7] about your suspension. Was Mike Corn present at the time?
>
> A: No.

---

[5] We also note that in answer to DOT's Petition for order to show cause, Petitioner admitted to the sale/lease-back arrangement with Fayette but claimed no knowledge of the improprieties of such arrangement. Furthermore, Petitioner presented the testimony of its vice-president of operations in an attempt to defend DOT's charges on grounds of lack of knowledge of Fayette's suspension. Thus, we find little credence in Petitioner's notice challenge.

[6] Note of Testimony at 91.

[7] Ray Anthony is a partner and co-owner of Anthony Iron and Metal Company (Petitioner).

Q: In other words, when you talked about the suspension, you were talking to Ray Anthony exclusively? . . .

A: That is correct.

Q: . . . [W]hy did that subject come up? Did that have to do with the sale?

A: Yes. Very simply when I first approached Mr. Anthony as to a possible sale, of course, he wanted to know why, and we discussed it just in the normal discussion: Ray, I can't operate like this. I have to sell off some equipment, and I know you are in the type of business that this would fit into. That's the only—the way it was brought up in the discussion, but that was with him alone.

Based on this testimony, we conclude that there is substantial evidence of record to support the finding that Petitioner had knowingly entered into the sale/lease-back arrangement with Fayette for the purpose of circumventing DOT's suspension of Fayette's special hauling privileges.

The remaining issue for review is whether the conclusion that the sale/lease-back violated applicable statutes and regulations is erroneous as a matter of law.

Section 4961 of the Vehicle Code, 75 Pa. C. S. §4961, under Subchapter D—Special Permits for Excessive Size and Weight, provides:

(a) General Rule—The department and local authorities with respect to highways under their respective jurisdictions may, upon application in writing showing good cause, issue special permits in writing *authorizing the applicant* to operate or move on specific highways any of the following:

(1) A vehicle which when unloaded exceeds [maximum size or weight limits].

(2) A combination carrying a nondivisible load exceeding [maximum size or weight limits].

(Emphasis added.)

The statute clearly states that DOT has the authority to issue permits *to an applicant* which permit the *applicant* to operate or move oversize or overweight loads on state highways. The statute does not authorize transfer of the permit, nor does it authorize anyone other than the applicant to make use of the permit.

It is now a well established rule of construction that words and phrases of a statute shall be construed, if possible, according to their common and plain meaning. Section 1903 of the Statutory Construction Act of 1972, 1 Pa. C. S. §1903; *Pennsylvania Department of Transportation v. Johnson*, 85 Pa. Commonwealth Ct. 638, 482 A.2d 1378 (1984). We conclude that the plain meaning of Section 4961 is to authorize the applicant for a permit, and only the applicant, to make use of the permit. This conclusion, moreover, is supported by the purpose of the statute. The oversize and overweight restrictions of the Vehicle Code were enacted "in order to prevent damage to public roads and to insure the safety of persons travelling over them." *Commonwealth v. Hennemuth*, 294 Pa. Superior Ct. 360, 439 A.2d 1241 (1982).

This purpose would clearly be circumvented if we were to interpret section 4961 as to deny DOT any control over who makes use of the permit once authorized. As the presiding officer stated:

If the applicant can willy-nilly transfer the special rights it is given by a permit, this control over the use of the highways is lost. Indeed, the situation which occurred in the present case could easily take place, i.e. an entity which has a record of disregarding the requirements of the permit procedure could end up making an ille-

gal movement under the guise of a validly issued permit.

The presiding officer found that Petitioner had knowingly participated in an arrangement that deliberately circumvented and thwarted a validly imposed suspension. This arrangement violated section 4961 of the Vehicle Code in that Petitioner knowingly permitted Fayette to use permits that had been specifically authorized for Petitioner's use only.

Accordingly, the order of DOT suspending Petitioner's special hauling privileges for thirty days is affirmed.

ORDER

AND NOW, September 15, 1987, the order of the Pennsylvania Department of Transportation in the above-captioned matter is affirmed.