**COMMONWEALTH of Pennsylvania**

v.

**SANICO, INC., Appellant.**

Commonwealth Court of Pennsylvania.

Argued June 5, 2003.
Decided Aug. 13, 2003.

Anthony J. Martino, Bangor, for appellant.

No appearance entered on behalf of appellee.

BEFORE: PELLEGRINI, Judge, LEAVITT, (P.) Judge, and KELLEY, Senior Judge.

LEAVITT, Judge.

Sanico, Inc. (Sanico) appeals from an order of sentence imposed by the Court of Common Pleas of Northampton County (trial court) on April 3, 2002. The trial court found Sanico guilty of causing or assisting a violation of 25 Pa.Code § 285.218(2), "Signs on vehicles,"[1] in viola-

---

1. The regulation states:

A vehicle or conveyance that is ordinarily or primarily used for the transportation of solid waste shall bear a sign that meets the following:

\* \* \*

(2) The sign shall include the specific type of solid waste transported by the vehicle or conveyance.

(i) Infectious or chemotherapeutic waste shall be designated: Infectious/Chemotherapeutic Waste.
(ii) Other municipal waste shall be designated: Municipal Waste.
(iii) Residual waste shall be designated: Residual Waste.
(iv) Mixed municipal and residual waste shall be designated: Municipal/Residual Waste.
25 Pa.Code § 285.218(2).

tion of the Solid Waste Management Act (Act).[2] We affirm the trial court.[3]

## HISTORY OF THE CASE

On October 16, 2001, Sanico received a non-traffic citation/summons (citation) for the illegal transportation of solid waste. Specifically, the citation charged that Sanico "caused or assisted in a violation of 25 Pa.Code § 285.218(2) by allowing solid waste to be transported in equipment which did not bear the type of waste being hauled." Reproduced Record 37a (R.R. ——). Sanico subsequently appeared before a district magistrate and was found guilty; it filed a timely appeal to the trial court.

At the *de novo* summary trial held on April 3, 2003, Joseph L. Delgrippo, an air quality specialist with the Pennsylvania Department of Environmental Protection (DEP), testified that he conducted a "trash net" at the Grand Central Sanitary Landfill in Pen Argyl, Pennsylvania on October 16, 2001. He stopped an incoming vehicle and, upon his inspection, observed that the vehicle did not display signs indicating the type of trash it was hauling.[4] The driver

of the vehicle, John A. Henderschott, produced documentation indicating that the vehicle was owned by Sanico. Consistent with the DEP's policy, Mr. Delgrippo issued citations both to the driver and to Sanico for failing to display the appropriate signs on the vehicle. On cross-examination, Mr. Delgrippo conceded that it was the DEP's policy to withdraw the citation against the driver/employee if the owner/employer enters a guilty plea, but not *vice versa.*[5]

James R. Smith, the General Manager and President of Sanico, testified that the company was engaged "in the business of collecting, recycling and garbage in the northwestern region of New Jersey" during the relevant time period. R.R. 17a. He further testified that he had "ultimate responsibility" for Sanico drivers, including Mr. Henderschott, who had been driving for Sanico since 1983. R.R. 18a. He acknowledged that he was "aware that the trucks that travel into Pennsylvania to dispose of waste are required to have signs on them." R.R. 18a. In order to comply with this obligation, Sanico obtained detachable signs[6] and placed them in the cabs of its vehicles. According to Mr.

---

**2.** Act of July 7, 1980, P.L. 380, *as amended,* 35 P.S. §§ 6018.101–6018.1003. Section 610(9) of the Act provides that:

It shall be unlawful for any person or municipality to:

\* \* \*

(9) Cause or assist in the violation of any provision of this act, *any rule or regulation of the department,* any order of the department or any term or condition of any permit.

35 P.S. § 6018.610(9) (emphasis added).

**3.** Sanico originally filed an appeal in the Superior Court, which transferred the matter to this Court. We have jurisdiction of this appeal pursuant to Section 762(a)(2)(ii) of the Judicial Code, 42 Pa.C.S. § 762(a)(2)(ii), which provides:

(a) **General rule.**—Except as provided in subsection (b), the Commonwealth Court

shall have exclusive jurisdiction of appeals from final orders of the courts of common pleas in the following cases:

\* \* \*

(2) Governmental and Commonwealth regulatory criminal cases.—All criminal actions or proceedings for the violation of any:

\* \* \*

(ii) Regulatory statute administered by any Commonwealth agency....

**4.** Mr. Delgrippo testified that he found no other violations.

**5.** In the instant case, the driver entered a guilty plea but Sanico did not.

**6.** The signs may be permanent or detachable. 25 Pa.Code § 285.218(4).

Smith, "the drivers were told that these signs had to be used when they hauled certain loads. And each driver carries a list of those lots in the truck which specifies that they have to be placarded." R.R. 22a. This practice has been in place since 1986. The day after the citation was issued, Mr. Smith found two full sets of signs in the vehicle operated by Mr. Henderschott. Accordingly, he was not aware of anything else the company could have done to prevent the violation. Because the vehicles are typically empty when they are dispatched, Sanico relies on the drivers to placard the vehicles when they pick up their loads.

At the conclusion of the testimony the trial court ruled as follows:

> The word cause in the statute pursuant to which the regulations have been passed does not ... include criminal intent.
>
> Cause means causing the truck to be so employed. Concerning the placard, the owner is responsible for causing the transportation of the waste in the vehicle. There's no requirement and dispute there was a bonafide effort of the company personnel here. And I accept that as true, that there was an attempt to ensure compliance with the statute and its regulations.
>
> But despite that, the owner is responsible for causing that transportation, and there's no requirement, however, that the placard be attached before acquiring the load. But it must be attached after the load is taken. And the fact that the driver has failed here does not excuse the owner, despite the owner's bonafide efforts to comply with the regulation. And as a result, essentially the Court

> finds that *the health code and its regulations were pursued, and in this case do not require criminal intent to either comply or you don't—you either are in compliance or not.* And you're responsible at all times to be in compliance with that regulation.

R.R. 34a–35a (emphasis added). Accordingly, Sanico was found guilty of a summary offense.

On June 21, 2002, the trial court issued a Pa. R.A.P.1925 Statement in which it observed that not every summary offense requires a showing of *mens rea.*[7] The trial court explained that "[w]e believe that the Health Code requirements require parallel proofs for violation of its summary proscription. Accordingly, we find the issue of intent to be irrelevant to the propriety of the conviction." Pa. R.A.P.1925 Statement at 3–4. Finally, the trial court found that "although testimony was elicited concerning the practice of the Commonwealth, this practice, if indeed in place, does not preclude the Commonwealth from proceeding against both the owner and driver of the vehicle. There is not sufficient evidence that could invoke a viable defense of selective prosecution." *Id.* at 4. This appeal followed.

On appeal, Sanico argues, first, that the trial court erred as a matter of law in concluding that Section 610(9) of the Act imposes strict liability. Because Section 610(9) requires the Commonwealth to prove that a defendant *caused or assisted* in the violation of the regulation, it does not impose strict liability. Accordingly, the trial court's finding "that there was an attempt to ensure compliance with the statute and its regulations," R.R. 34a,

---

**7.** The trial court compared the Crimes Code and the Vehicle Code, both of which proscribe certain conduct and establish sanctions in the form of summary offenses. Each code, however, establishes different culpability requirements. *Mens rea* is not an element of summary offenses under the Vehicle Code.

should have resulted in an acquittal.[8] Sanico further argues that the trial court erred in rejecting its argument that the Commonwealth engaged in discriminatory and selective prosecution based upon Sanico's status as an owner/employer as opposed to a driver/employee. Sanico submitted sufficient evidence to prove a *prima facie* case of selective prosecution but the trial court summarily rejected this contention without considering the merits.[9] We will address these arguments *seriatim.*

## STRICT LIABILITY UNDER THE SOLID WASTE MANAGEMENT ACT

Sanico "acknowledges that it is the general legislative purpose of the Act to impose liability on corporations and to provide for *absolute liability* for violations."[10]

8. With respect to the liability of organizations and certain related persons, the Crimes Code provides:

   **(d) Defenses.**—In any prosecution of a corporation or an unincorporated association for the commission of an offense included within the terms of paragraph (a)(1) or paragraph (c)(1) of this section, *other than an offense for which absolute liability has been imposed,* it shall be a defense if the defendant proves by a preponderance of evidence that the high managerial agent having supervisory responsibility over the subject matter of the offense employed due diligence to prevent its commission. *This subsection shall not apply if it is plainly inconsistent with the legislative purpose in defining the particular offense.*

   18 Pa.C.S. § 307(d) (emphasis added).

9. The Commonwealth submitted a letter stating that it was relying on the Pa. R.A.P.1925 Statement submitted by the trial court, in lieu of submitting a brief.

10. Section 606 of the Act, "Criminal penalties," states as follows:

    (a) Any person, other than a municipal official exercising his official duties, or any municipality who violates any provision of this act, the rules and regulations of the department, or any order of the department, or any term or condition of any permit upon conviction thereof in a summary proceeding, shall be sentenced to pay a fine of not less than $100 and not more than $1,000 and costs and, in default of the payment of such fine and costs, to undergo imprisonment for not more than 30 days.

    (b) Any person other than a municipal official exercising his official duties who violates any provision of this act, any rule or regulation of the department, any order of the department, or any term or condition of any permit, shall be guilty of a misdemeanor of the third degree and, upon conviction, shall be sentenced to pay a fine of not less than $1,000 but not more than $25,000 per day for each violation or to imprisonment for a period of not more than one year, or both.

    (c) Any person other than a municipal official exercising his official duties who, within two years after a conviction of a misdemeanor for any violation of this act, violates any provision of this act, any rule or regulation of the department, any order of the department, or any term or condition of any permit shall be guilty of a misdemeanor of the second degree and, upon conviction, shall be sentenced to pay a fine of not less than $2,500 nor more than $50,000 for each violation or to imprisonment for a period of not more than two years, or both.

    (d) Any person or municipality that knowingly:

    (1) transports any hazardous waste to a facility which does not have a permit under this act to accept such waste for storage, treatment or disposal; or

    (2) makes any false statement or representation in any application label, manifest, record, report, permit or other document *relating to hazardous waste generation,* storage, transportation, treatment or disposal, which is filed, submitted, maintained or used for purposes of compliance with this act or any municipality which knowingly stores, treats or disposes of any hazardous waste without having obtained a permit for such storage, treatment or disposal; shall be guilty of a misdemeanor of the third degree and, upon conviction, shall be sentenced to pay a fine of not less than $1,000 but not more than $25,000 per day for each violation.

    (e) Any person or municipality that within two years after a conviction of a misdemeanor for any violation of this act, com-

Sanico's brief at 12 (emphasis added). Nevertheless, it argues that Section 610(9) of the Act establishes an exception to the general rule of strict liability because the Commonwealth must prove that a defendant *caused or assisted* in the violation of the regulation. Accordingly, the trial court's finding "that there was an attempt [by Sanico] to ensure compliance with the statute and its regulations," R.R. 34a, should have resulted in an acquittal. We disagree.

▮ A criminal conviction typically requires both an act and criminal or wrongful intent. *Commonwealth v. CSX Transportation, Inc.*, 653 A.2d 1327, 1331 (Pa.Cmwlth.1995) (citing *Morissette v. United States*, 342 U.S. 246, 72 S.Ct. 240, 96 L.Ed. 288 (1952)).[11] As we noted in *CSX*, however, " '[p]ublic welfare' statutes ... often dispense with the intent requirement imposing, instead, absolute liability. Absolute liability is imposed in these types of statutes because the proscribed conduct is subject to stringent public regulation and may seriously threaten the community's health or safety." *Id.* at 1331 (footnote omitted). Our Supreme Court has explained:

> In recent decades ... many states have enacted detailed regulatory provisions in

---

mits a violation of subsection (d), shall be guilty of a misdemeanor of the second degree and upon conviction, shall be sentenced to pay a fine of not less than $2,500 nor more than $50,000 for each violation or to a term of imprisonment of not less than two years, but not more than 20 years, or both.

(f) Any person who stores, transports, treats, or disposes of hazardous waste within the Commonwealth in violation of section 401, or in violation of any order of the department shall be guilty of a felony of the second degree and, upon conviction, shall be sentenced to pay a fine of not less than $2,500 but not more than $100,000 per day for each violation or to imprisonment for not less than two years but not more than ten years, or both.

(g) Any person who intentionally, knowingly or recklessly stores, transports, treats, or disposes of hazardous waste within the Commonwealth in violation of any provision of this act, and whose acts or omissions cause pollution, a public nuisance or bodily injury to any person, shall be guilty of a felony of the first degree, and upon conviction, shall be sentenced to pay a fine of not less than $10,000 but not more than $500,000 per day for each violation or to a term of imprisonment of not less than two years, but not more than 20 years, or both.

(h) Each violation for each separate day and each violation of any provision of this act, any rule or regulation of the department, any order of the department, or term and condition of a permit shall constitute a separate and distinct offense under subsections (a), (b), (c), (d) and (e).

(i) *With respect to the offenses specified in subsections (a), (b), (c) and (f), it is the legislative purpose to impose absolute liability for such offenses.* However, a generator who has complied with section 403 shall not be held criminally liable under this section if wastes have been transported in compliance with all applicable provisions of this act and the regulations promulgated and licenses issued thereunder, and provided that such wastes have been accepted by a facility designated in accordance with section 403(b)(6).

(j) *With respect to the offenses specified in subsections (a), (b), (c), (d), (e), (f) and (g), it* is the legislative purpose to impose liability on corporations.

35 P.S. § 6018.606 (emphasis added).

11. In *Morissette*, the United States Supreme Court explained that public welfare offenses:

> are not in the nature of positive aggressions or invasions ... but are in the nature of neglect where the law requires care, or inaction where it imposes a duty.... [This is because] [t]he accused, if he does not will the violation, usually is in a position to prevent it with no more care than society might reasonably expect and no more exertion than it might reasonably exact from one who assumed his responsibilities. Also, penalties commonly are relatively small, and conviction does not grave damage to an offender's reputation.

*Id.* at 255–256, 72 S.Ct. 240.

fields which are essentially noncriminal, e.g., pure food and drug acts, speeding ordinances, building regulations, and child labor, minimum wage and maximum hour legislation. Such statutes are generally enforceable by light penalties, and *although violations are labeled crimes, the considerations applicable to them are totally different from those applicable to true crimes*, which involve moral delinquency and which are punishable by imprisonment or another serious penalty. *Such so-called statutory crimes are in reality an attempt to utilize the machinery of criminal administration as an enforcing arm for social regulations of a purely civil nature*, with the punishment totally unrelated to questions of moral wrongdoing or guilt. It is here that the social interest in the general well-being and security of the populace has been held to outweigh the individual interest of the particular defendant. *The penalty is imposed despite the defendant's lack of a criminal intent or mens rea.* *Commonwealth v. Koczwara*, 397 Pa. 575, 580, 155 A.2d 825, 827–828 (1959) (emphasis added). In sum, the legislature, by virtue of its police power, may define a crime in such a way that proof of criminal intent is not necessary. *Commonwealth v. Hennemuth*, 294 Pa.Super. 360, 439 A.2d 1241, 1243 (1982) (citing *Koczwara*).

■ The question of whether criminal intent is required is one of statutory construction "to be determined from the language of the statute in the light of its manifest purpose and design." *Holsten v. Haverford Township*, 698 A.2d 174, 175 (Pa.Cmwlth.1997) (internal quotations omitted). The omission of words such as "knowingly," "willfully" and "intentionally" from a statute is "highly significant" and "indicates a legislative intent to eliminate both knowledge and criminal intent as necessary ingredients of such offenses."[12] *Koczwara*, 397 Pa. at 583, 155 A.2d at 829. *See also Commonwealth v. Scolieri*, 571 Pa. 658, 667, 813 A.2d 672, 677 (2002) (quoting *Koczwara*).

Bearing in mind these principles, we turn to the pertinent sections of the Act. The purpose of the Act is, among other things, to protect the public health, safety and welfare from the dangers associated with the transportation of solid waste. Section 102 of the Act, 35 P.S. § 6018.102.[13] To carry out this important

12. The converse of this rule is also true. The inclusion of such words in a statute indicates a legislative intent to require the inclusion of those *mens rea* requirements as necessary ingredients of those offenses. *Koczwara*, 397 Pa. at 583, 155 A.2d at 829; *Scolieri*, 571 Pa. at 667, 813 A.2d at 677 (quoting *Koczwara*).

13. It states:
The Legislature hereby determines, declares and finds that, since improper and inadequate solid waste practices create public health hazards, environmental pollution, and economic loss, and cause irreparable harm to the public health, safety and welfare, it is the purpose of this act to:
(1) establish and maintain a cooperative State and local program of planning and technical and financial assistance for comprehensive solid waste management;
(2) encourage the development of resource recovery as a means of managing solid waste, conserving resources, and supplying energy;
(3) require permits for the operation of municipal and residual waste processing and disposal systems, licenses for the transportation of hazardous waste and permits for hazardous waste storage, treatment, and disposal;
(4) protect the public health, safety and welfare from the short and long term dangers of transportation, processing, treatment, storage, and disposal of all wastes;
(5) provide a flexible and effective means to implement and enforce the provisions of this act;
(6) establish the Pennsylvania Hazardous Waste Facilities Plan, which plan shall address the present and future needs for the

social purpose, the legislature designed a scheme that imposes absolute liability, even on corporations, for certain offenses, including the violation of the rules and regulations of the DEP.

■ With respect to the language of Section 610(9), specifically, had the legislature intended to punish only those persons who acted with criminal intent, it would have so stated. By excluding all reference to terms such as "knowingly," "willfully" and "intentionally," the legislature expressed the intention to prohibit absolutely the act of causing or assisting in the violation of a waste management regulation, including the regulation requiring signs on vehicles transporting solid waste. Further, the Act promulgates a regulatory scheme, or, in the language of *Koczwara*, "social regulations of a purely civil nature." Section 610(a) of the Act was intended to be enforced without regard to criminal intent.

Finally, Sanico's argument that the language "cause or assist" removes Section 610(9) violations from the realm of strict liability is unavailing. Causation and criminal intent are not synonymous. To "cause" something means "[t]o be the cause or occasion of; to effect as an agent; to bring about; to bring into existence; to make to induce; to compel." BLACK'S LAW DICTIONARY 221 (6th ed.1990). "Criminal intent," on the other hand, is:

> treatment and disposal of hazardous waste in this commonwealth;
> (7) develop an inventory of the nature and quantity of hazardous waste generated within this Commonwealth or disposed of within this Commonwealth, wherever generated;
> (8) project the nature and quantity of hazardous waste that will be generated within this Commonwealth in the next 20 years or will be disposed of within this Commonwealth, wherever generated;

> [t]he intent to commit a crime; malice, as evidenced by a criminal act; an intent to deprive or defraud the true owner of his property. Includes those consequences which represent the very purpose for which an act is done, regardless of the likelihood of occurrence, or are known to be substantially certain to result, regardless of desire. *May be general or specific intent; mens rea.*

BLACK'S LAW DICTIONARY 373 (6th ed.1990) (emphasis added).

■ Here, the trial court properly concluded that Sanico, as the owner/employer, caused the transportation of solid waste in the vehicle that was stopped by DEP. Under 25 Pa.Code § 285.218(2), that vehicle was required to bear signs reflecting the type of waste it was transporting. It is undisputed that the appropriate signs were not displayed. The fact that there was a "bonafide effort of the company personnel," R.R. 34a, to comply with the regulation is immaterial because Section 610(9) imposes absolute liability.

## SELECTIVE PROSECUTION

Sanico claims that it has been the subject of selective prosecution. This claim is based upon the admitted enforcement policy of DEP to drop a summary prosecution of a driver where the owner or employer pleads guilty to the offense. Thus, Sanico claims that it was entitled to go free once its driver pleaded guilty. Sanico's chal-

> (9) provide a mechanism to establish hazardous waste facility sites;
> (10) implement Article I, section 27 of the Pennsylvania Constitution; and
> (11) utilize, wherever feasible, the capabilities of private enterprise in accomplishing the desired objectives of an effective, comprehensive solid waste management program.

lenge to DEP's enforcement policy is unfounded.

 To establish a selective prosecution defense in Pennsylvania, the defendant must prove that (1) others who are similarly situated are generally not prosecuted for similar conduct, and (2) the defendant was intentionally and purposefully singled out for an invidious reason. *Commonwealth v. Celano,* 717 A.2d 1071, 1074 (Pa. Cmwlth.1998).

 Sanico does not allege, and there is no evidence in the record to suggest, that other similarly situated *owners* were not prosecuted under similar circumstances. It may, indeed, be the Commonwealth's practice to cite the owner/employer and the driver/employee for the same violation and then withdraw the citation against the driver/employee if the owner/employer enters a guilty plea. This practice does not preclude the Commonwealth from proceeding against the owner/employer where the driver/employee has already entered a guilty plea.[14] Further, there is no evidence in the record that Sanico was intentionally and purposefully singled out for an invidious reason. Accordingly, the trial court properly concluded that Sanico's selective prosecution defense was not viable.

For these reasons, the order of the trial court is affirmed.

### ORDER

AND NOW, this 13th day of August, 2003, the order of sentence of the Court of Common Pleas of Northampton County

dated April 3, 2002 in the above-captioned matter is hereby affirmed.

---

**14.** Sanico really challenges the exercise of DEP's prosecutorial discretion. The exercise of prosecutorial discretion is not subject to judicial review. *Commonwealth v. Malloy,* 304 Pa.Super. 297, 450 A.2d 689 (1982). The doctrine also applies to enforcement by administrative agencies. *In re Frawley,* 26 Pa. Cmwlth. 517, 364 A.2d 748 (1976). It is the agency's province to assess whether a violation has occurred and whether to expend resources on one particular enforcement action as opposed to another. *Heckler v. Chaney,* 470 U.S. 821, 831, 105 S.Ct. 1649, 84 L.Ed.2d 714 (1985).